UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA TULLY, KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, DOMINIC TUMMINELLO, and INDIANA VOTE BY MAIL, INC., individually, and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br>  -vs-<br><br>PAUL OKESON, S. ANTHONY LONG, SUZANNAH WILSON OVERHOLT, and ZACHARY E. KLUTZ, in their official capacity as members of the Indiana Election Commission, and CONNIE LAWSON, in her official capacity as the Indiana Secretary of State,<br><br>    Defendants. | Case No. 1:20-cv-1271 |

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

  Come now Plaintiffs, by counsel, and for their Complaint for declaratory and injunctive relief against Defendants, state as follows:

**INTRODUCTION**

  1. This is an action for declaratory and injunctive relief against Indiana election officials who have failed to take necessary actions to protect Indiana voters against having to make a choice between their personal safety and exercising their right to vote on Election Day, November 3, 2020.

  2. The citizens of Indiana are in the midst of the worst pandemic in modern history. Because of a novel coronavirus, and the disease it causes known as COVID-19, federal, state,

county and city officials have ordered various limitations statewide, the central feature of which is to limit contact between persons, commonly known as "social distancing."

3. Public health officials warn that government-ordered "social distancing" will probably be in effect for a number of weeks and possibly months and, even after such order is lifted in Indiana, life in the public square will need to be conducted cautiously; with additional restrictions and loosening likely to be re-imposed at additional intervals, until an effective vaccine is discovered and is broadly available and distributed. Experts estimate this timeframe to be between twelve (12) to eighteen (18) months before an effective vaccine will be ready for public use. https://www.webmd.com/lung/covid-19-vaccine#1 (last visited April 27, 2020).

4. On April 21, 2020, the director of the Centers for Disease Control and Prevention warned that a second wave of the novel coronavirus this fall will be even more lethal than the one that is currently ravaging the nation. This wave that may coincide with the November 3, 2020 general election. https://www.washingtonpost.com/health/2020/04/21/coronavirus-secondwave-cdcdirector/ (last visited April 27, 2020).

5. On April 22, 2020, Anthony S. Fauci, M.D., an immunologist who is head of the National Institute of Allergy and Infectious Diseases, stated with even greater certainty that "[w]e *will* have coronavirus in the fall. I am convinced because of the degree of transmissibility that it has, the global nature. What happens with that will depend on how we're able to contain it when it occurs." https://www.usatoday.com/story/news/politics/2020/04/22/coronavirus-dr-anthony-fauci-says-i-am-convinced-second-wave/3009131001/ (emphasis added) (last visited April 27, 2020).

6. On April 23, 2020, Dr. Michael T. Osterholm, Director of the Center for Infectious Disease, Research, and Policy at the University of Minnesota, predicted that the Coronavirus will still be spreading well into 2021 and will not stop until 60-70% of people have

been infected. In his words, we are currently in the "second inning of a nine-inning game."

https://www.cnn.com/2020/04/21/opinions/bergen-osterholm-interview-two-opinion/index.html (last visited April 27, 2020).

7. The individual Plaintiffs seek to vote safely in the November 2020 general election; and to do so by casting an absentee ballot, by mail, in precisely the same manner in which they are allowed to vote in the June 2020 primary election. The Indiana law that allows other voters to vote by mail, but denies the same privilege to Plaintiffs, arbitrarily discriminates between categories of qualified voters, denies Plaintiffs any reasonable alternative means of voting that does not endanger their own or others' health, safety, and lives; and violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, and the Equal Privileges and Immunities Clause of the Indiana Constitution.

**JURISDICTION, VENUE & CAUSE OF ACTION**

8. This Court has subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (civil rights cases), 2201 and 2202 (declaratory relief).

9. Venue is appropriate in this Court because Defendants have their principal offices in Indianapolis and "reside" in this District. 28 U.S.C. § 1391(b)(1).

10. Plaintiffs set forth claims under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, and under state law. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

11. Plaintiff Barbara Tully is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. She objects to being forced to choose between her health and her right to vote. She is severely limiting her exposure to anyone else, and has

reduced her activities outside of her home. She does not want to be forced into close proximity to other people in order to vote in the November 2020 general election. She has worked as a poll inspector over the past several years but will not be doing so this year specifically because of the danger posed by COVID-19.

12. Plaintiff Katharine Black is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. Her husband has a compromised immune system and she cannot risk exposing him to COVID-19. She therefore needs to vote by absentee ballot in the November 2020 General Election.

13. Plaintiff Marc Black is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. He has a compromised immune system and cannot risk being exposed to others in order vote in the November 2020 General Election. He therefore needs to vote by absentee ballot in the November 2020 General Election.

14. Plaintiff Shelly Brown is a resident of Hamilton County, State of Indiana, and will be under 65 years of age on November 3, 2020. She wants to vote by mail in the November 3, 2020 election. She is fearful of voting in person because of the risk of being infected by COVID-19 and then infecting her husband, who is 71 years-old, and a cancer survivor as well as a former smoker. She therefore needs to vote by mail in the November 3, 2020, general election.

15. Plaintiff David Carter is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. Mr. Carter is concerned that it is impossible for in-person voters and poll workers to stay safe and maintain social distancing during the 2020 November elections. According to science and history, he believes COVID-19 will likely surge again this fall. For these reasons, he desires to vote by mail in the November 3, 2020 general election.

16. Plaintiff Rebecca Gaines is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. She was exposed to COVID-19 at her job and became extremely sick. She does not want to have to go to the polls and be exposed again to COVID-19, and thus desires to cast an absentee ballot in the November 3, 2020 general election.

17. Plaintiff Janice Johnson is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. She believes COVID-19 poses an unmitigated safety and health threat to every voter and poll worker participating in the November 2020 election; and has a fear for her personal health and safety if she has no alternative to in-person voting in the November 3, 2020 general election, in which she wishes to vote by mail.

18. Plaintiff Elizabeth Kmieciak is a resident of St. Joseph County, State of Indiana, and will be under 65 years of age on November 3, 2020. She usually works at the polls on election day, but is unwilling to do so this year due to the threat of COVID-19. Because of her concern for her health and safety, she wishes to vote by absentee ballot in the November 3, 2020, general election.

19. Plaintiff Chaquitta McCleary is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. She is healthy, but her daughter has significant asthmatic issues, and she is concerned that if she is forced to vote in person she may contract the virus and potentially expose her daughter. She thus desires to vote by mail in the November 3, 2020 general election so she may vote without risking her health and that of her daughter.

20. Plaintiff Katherine Paolacci is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. She believes it is imperative that contact in large groups be limited as much as possible until the pandemic is no longer a massive threat. She

works an unpredictable schedule at a public institution, where she encounters people who are members of at-risk populations. Limiting her presence in large groups is important to her welfare, and that of those with whom she works. Accordingly, she wishes to vote by mail in the November 3, 2020 general election.

21. Plaintiff David Slivka is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. He is a respiratory therapist, and thus knows the importance of social distancing because COVID-19 can be transferred through a cough or sneeze, or just by breathing within six feet of another person. At a vote center or polling place it would be difficult, if not impossible, for him (or anyone) to maintain proper social distancing. To ensure that no one gets sick or dies from this serious disease, Mr. Slivka believes that he, and everyone, should have the option of voting by mail in the November 3, 2020 general election. Mr. Slivka would not feel safe voting in person.

22. Plaintiff Dominic Tumminello is a resident of Marion County, State of Indiana, and will be under 65 years of age on November 3, 2020. He is concerned about having to choose to vote or risk his health and the health of his family. He does not have underlying health conditions, but his parents (both 84 years-old) and mother-in-law (91 years-old) are at high risk if they contract COVID-19. He believes citizens should not have to risk their life or the lives of their family members or others in order to exercise their right to vote, and he thus desires to vote by mail in the November 3, 2020 general election.

23. Each and every individual plaintiff is eligible and qualified to vote in the November 3, 2020, general election in the State of Indiana.

24. None of the individual plaintiffs currently anticipates satisfying any of the statutory criteria of Indiana Code § 3-11-10-24(a)(1), (2), or (5) - (13), which would entitle them to vote by mail.

25. Plaintiff Indiana Vote By Mail, Inc. ("Indiana VBM"), is a non-profit corporation organized under the laws of the State of Indiana. One of its purposes and missions is to expand the right to vote by mail to all who prefer to vote by mail rather than in person, particularly during this national and state-wide public health emergency caused by the coronavirus.

26. Indiana VBM has organizational standing on its own behalf and associational standing on behalf of its members who are under the age of 65 and who are not otherwise entitled to vote by mail by virtue of Indiana law. The interests VBM seeks to protect are germane to its purpose, and the relief sought is declaratory and injunctive.

27. Defendants Paul Okeson, S. Anthony Long, Suzannah Wilson Overholt, and Zachary E. Klutz, are members of the IEC, which is charged with administering Indiana election laws. Ind. Code § 3-6-4.1-14 (a)(1). This includes the responsibility to adopt rules to "[g]overn the fair, legal, and orderly conduct of elections." *Id.* It also includes the power to adopt, by unanimous vote of its entire membership, temporary emergency rules "to implement a court order requiring [it]...to administer an election in a manner not authorized by this title," *id.* at -16, or in cases of a "natural disaster or other emergency." *Id.* at -17 (a). Each has acted or will continue to act under color of state law. Each is sued in his or her official capacity only.

28. Defendant Connie Lawson is the Indiana Secretary of State and in that capacity is the chief election official of the State, whose primary office is in this judicial district. Ind. Code § 3-6-3.7-1. She is responsible for enforcing and implementing Indiana's election laws and her office routinely issues guidance to county election officials in each of Indiana's 92 counties on matters involving election administration. She is sued in her official capacity only.

## FACTS

29. The Coronavirus is a highly-infectious virus that makes it extremely dangerous for people to gather in public, particularly in larger groups in confined spaces. As with other

respiratory pathogens, the transmission is believed to occur through respiratory droplets from coughing and sneezing. Aerosol transmission is also possible in case of protracted exposure to elevated aerosol concentrations in closed spaces. Epidemiologists believe that individuals who remain asymptomatic can transmit the virus. The data suggests that the use of isolation is the best way to contain this pandemic, because no one is believed to be immune to the virus (until, possibly, they have been infected, and their immune systems have generated antibodies). Essentially, the entire population is at risk of contracting the disease.

30. Some experts also believe that as many as 88% of carriers of the disease may be asymptomatic, which frustrates efforts at detection and isolation. https://www.washingtonpost.com/outlook/2020/04/20/we-tested-all-our-patients-covid-19-found-lots-asymptomatic-cases/ (last visited April 27, 2020).

31. The virus in serious cases causes respiratory failure, septic shock, and/or multiple organ dysfunction or failure. The disease it causes, COVID-19, has already killed over 56,000 Americans, including 901 Hoosiers, and infected more than 16,588 Hoosiers. https://coronavirus.jhu.edu/data/mortality (last visited April 28, 2020); and https://www.coronavirus.in.gov (last visited April 28, 2020).

32. Approximately 65.3% of infected Hoosiers, or over 10,815 people, are under 60 years of age. https://www.coronavirus.in.gov (last visited April 28, 2020.)

33. The foregoing numbers of deaths and infections are expected to continue to increase in the coming weeks and months. https://coronavirus.jhu.edu/data/cumulative-cases (last visited April 27, 2020)

34. On March 6, 2020, in response to the Coronavirus pandemic, Indiana Governor Eric Holcomb signed Executive Order (EO) 2020-02, declaring a public health disaster emergency to prevent the spread of the virus. Ten (10) days later, on March 16, Gov. Holcomb

signed EO 2020-04, which among other things, banned public gatherings of more than fifty (50) persons.

35. On March 20, Gov. Holcomb signed EO 2020-07 postponing the Indiana primary election for four weeks, from May 5 to June 2. On March 23, Gov. Holcomb issued EO 2020-08 which banned public gatherings of more than ten (10) persons and ordered the shutdown of many businesses deemed non-essential. And on April 3, Gov. Holcomb signed EO 2020-17, renewing the declaration of a public health disaster emergency for an additional 30 days until May 5, 2020.

36. According to medical and scientific experts, the expected outcome of the various measures ordered by levels of government, if effective, will be to "flatten the curve." Aggressive social distancing efforts won't stop the virus but is intended to slow the spread to keep it from overwhelming health-care resources so fewer people would require hospital beds and ventilators at the same time. https://www.washingtonpost.com/nation/2020/04/01/lockdown-coronavirus-california-data/ (last visited April 28, 2020).

37. South Korea, widely praised for its response to the pandemic, upon releasing its citizens from social distancing orders, experienced new emerging cases that have required re-imposition of those measures. Other Asian and European nations have had similar experiences.

38. Most of the world, the nation, and the State of Indiana, can expect wave after wave of new infections until there is an effective treatment, a vaccine and/or greater than approximately 60% of the population survive the epidemic, thus creating a measure of "herd immunity." For these reasons, along with the lack of adequate testing in Indiana, it is currently impossible to know for how long extreme social distancing measures will be necessary. https://www.forbes.com/sites/brucelee/2020/03/26/how-long-should-social-distancing-last-when-will-covid-19-coronavirus-end/#65c2eb40429a  (last visited April 17, 2020).

39. With no vaccine or proven effective specific treatment for this virus available yet, keeping people physically separated by closing schools, restaurants, sporting and cultural venues, and workplaces, and having people stay at home to limit social contact, are the most effective measures to slow the spread of the virus.

40. These pandemic conditions will have a significant impact upon the upcoming elections in Indiana in 2020, as voters and poll workers will be anxious about appearing at a public polling location to vote in person because of fear they may contract the virus.

41. Because of the national and Indiana-declared health emergencies, Defendant members of the Indiana Election Commission ("IEC"), using their emergency powers granted by Indiana law, have already taken the unprecedented measure of postponing Indiana's primary election from May 5 to June 2, 2020. IEC Orders 2020-37 and 40.[1]

42. Indiana law entitles some but not all registered voters to vote by mail. In that regard, Ind. Code § 3-11-10-24(a) describes thirteen (13) categories of voters who are "entitled" to vote by mail.

43. One of those categories is a "voter with disabilities." *Id*. at (a)(4). Another is a voter confined on election day to their residence "because of an illness or injury..." *Id.* at (a)(3). Those statutes do not define what constitutes "confined on election day to the voter's residence because of an illness or injury," or "voter with disabilities."

44. On March 25, 2020, the IEC members suspended statutory restrictions on voting by mail. They accomplished this by ruling that the words "voter with disabilities" in Ind. Code § 3-11-10-24(a)(4) shall be construed to include any "voter who is unable to complete their ballot

---

[1] https://www.in.gov/sos/elections/files/Indiana%20Election%20Commission%20Order%202020-37.pdf and https://www.in.gov/sos/elections/files/Order%202020-40%20signed.pdf, last visited April 20, 2020.

because they are temporarily unable to physically touch or be in safe proximity to another person." IEC Order 2020-37, Section 9A.

45. The IEC has not approved an order that would apply this definition to voters who vote in the November 3, 2020, general election, and the IEC's willingness to suspend restrictions on mail voting is highly uncertain, particularly in light of Secretary Lawson's April 16, 2020 letter to the U.S. Election Assistance Commission in which she requests $8 million for personal protective equipment and sanitation supplies for in-person early and in-person Election Day voting on November 3 and her declaration that Indiana is "not a vote by mail state" even though Indiana has used mail absentee voting for decades.

https://www.eac.gov/sites/default/files/paymentgrants/cares/IN_CARES_Disbursement_Request Letter.pdf (last visited April 27, 2020).

46. Without an order from the IEC suspending the statutory restrictions on voting by mail, most, if not all, county election boards will be unwilling to provide absentee ballots to voters who are under 65 years of age and who do not fall within one of the categories of voters statutorily entitled to vote by mail, and who are not *themselves* physically ill from the coronavirus and confined to their residence.

47. It is reasonable to expect that COVID-19 will continue to be in circulation without a vaccine or effective treatment through the elections of 2020 and beyond.

48. It is reasonable to expect that some forms of social distancing will continue, especially with regards to large public gatherings as occur at polling places on a presidential election day.

49. Even if there is an easing of social distancing, there will continue to be a public and personal health risk attendant to large gatherings such as voting at polling places, because

many persons, especially those with compromised immune systems or pre-existing underlying health issues, will remain susceptible to becoming infected.

50. Events surrounding Wisconsin's April 7, 2020, primary election provided a clear example of the disarray, confusion, danger, and disenfranchisement that is likely to result when an in-person election is held during a pandemic. Wisconsin state health officials have already identified as many as 40 people who appeared to have contracted the virus through activities relating to the April 7 election. https://talkingpointsmemo.com/news/wisconsin-covid-40-election (last visited April 27, 2020); https://www.wuwm.com/post/40-coronavirus-cases-milwaukee-county-linked-wisconsin-election-health-official-says#stream/0 (last visited April 27, 2020).

51. On April 6, 2020, the United States Supreme Court issued an opinion that permitted the April 7, 2020, Wisconsin primary to proceed based on the narrow question presented to it. However, the Court also pointedly emphasized that it was *not* "expressing an opinion on the broader question of... whether other reforms or modifications in election procedures in light of COVID–19 are appropriate." *Republican National Committee v. Democratic National Committee* (Docket 19A1016), 589 U.S. ___ (2020) https://www.supremecourt.gov/opinions/19pdf/19a1016_o759.pdf.

52. It is critically important that election officials begin immediately to prepare for the November 3, 2020 general election where more ballots are cast in-person and turnout is expected to be extremely high.

53. Because of the fundamental nature of the right to vote, it is also critically important that the judicial branch intervene where appropriate when the political system fails to act in a manner consistent with protecting citizens' right to vote, the most precious right in a democracy.

54. On April 16, 2020, during a press conference, both Defendant Lawson and Gov. Eric Holcomb rejected allegations by President Donald Trump that voting by mail is ripe for fraud. "We've long been voting by mail. I have a high level of confidence in the integrity of our election process," Holcomb said. "We'll have a safe and secure election." https://www.nwitimes.com/news/local/govt-and-politics/indiana-primary-election-to-feature-mail-in-and-in-person-voting/article_fce4d801-a81e-567a-8f75-46cf7db1fd28.html (last visited April 27, 2020).

55. Until IEC Orders 2020-37 and -40, no Indiana court or administrative agency had issued an opinion or order construing a "voter with disabilities" as used in I. C. § 3-11-10-24 (a)(4) to include all voters who are physically unable to be in close proximity to another person. No Indiana court or administrative agency has ever construed the term "illness" as used in I.C § 3-11-10-24 (a)(3) to include an asymptomatic individual who fears contracting the virus and COVID-19 by venturing into a crowded public space with others such as a public polling place.

56. Pursuant to Ind. Code § 3-6-4.1-17 (b), emergency orders issued by the IEC expire not later than thirty (30) days after the order is issued. Consequently, those orders must be renewed one more time prior to the June 2 primary election. Even if the IEC chooses to renew those emergency orders, there is no similar order in place or currently being contemplated for the November 3, 2020 general election.

57. Pursuant to Ind. Code § 3-11-4-3(a) and (c), applications for an absentee ballot for the November 3, 2020, general election may be submitted now and "not later than noon, twelve (12) days before the election." *Id.* at (a)(4). Twelve days before the November 3, 2020 election is October 22, 2020.

58. Absent a definitive judicial ruling, different county election boards may adopt potentially conflicting interpretations of who is a "voter with disabilities," or who is confined to a voter's home on election day "because of an illness," and who is thus entitled to vote by mail.

59. Moreover, most county clerks will likely not provide a voter who submits an application for an absentee ballot for the November 3, 2020 general election, but does not indicate on the application that the voter is entitled to vote by mail because he or she falls within one of the categories of voters set forth in Ind. Code § 3-11-10-24 (a).

**Class action allegations**

60. This case is appropriate for resolution with a Plaintiff class of Indiana voters because the prosecution of separate actions by or against individual members of the class would create a risk of: inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or, adjudications with respect to individual members of the class, that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; or the parties opposing the class have refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

61. The class of plaintiffs is so numerous that joinder of all members is impracticable.

62. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

63. Plaintiffs' claims are typical of the claims of the class.

64. Plaintiffs will fairly and adequately protect the interests of the class.

## LEGAL CLAIMS

### Count I
### Violation of the 14th Amendment
### Brought Pursuant to 42 U.S.C. § 1983 against all Defendants

65. Plaintiffs incorporate by reference the allegations of paragraphs 1-64.

66. The right to vote is one of the most fundamental of all the rights conferred on citizens by the United States Constitution. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964); *Segovia v. United States,* 880 F.3d 384, 390 (7th Cir. 2018) ("the right to vote 'is a fundamental matter in a free and democratic society.'") (quoting *Reynolds v. Sims,* 377 U.S. 533, 561-62 (1964)).

67. The fundamental right to vote implicitly includes the right to equally participate in a trustworthy process that does not require a citizen to choose between endangering his or her health or safety and exercising the franchise.

68. Voting by mail in Indiana has been permitted for several decades and has always been, and remains, a safe, reliable, honest, and secure method of participating in the electoral system and exercising one's right to vote.

69. Absentee voting by mail without excuse is allowed in 34 states and the District of Columbia; and in the State of Indiana for the June 2, 2020 primary election. Sixteen (16) states impose prerequisite conditions for mail voting, but nearly half of those states already have made clear that COVID-19 provides a valid excuse, at least during 2020 primary elections. https://www.brennancenter.org/our-work/research-reports/covid-19-should-be-legitimate-excuse-vote-mail (last visited April 27, 2020).

70. Ind. Code § 3-11-10-24 (a) entitles some but not all voters to vote by mail, including but not limited to a voter who has a specific and reasonable expectation to be out of the county on election day, is serving as an election worker in a precinct on election day, will be confined on election day due to illness or injury, is a voter with disabilities, is "elderly," is caring for a person confined to a private residence, is engaged in a religious observation on election day, is a public safety officer or member of the military, lacks transportation to the polls, or is a serious sex offender. *Id.* at (a) (1)-(13).

71. By entitling certain classes of voters to submit an absentee ballot by mail in the 2020 general election, but denying that same privilege to Plaintiffs and other similarly situated voters, I. C. § 3-11-10-24(a), as applied during the pandemic, violates the Equal Protection Clause of the Fourteenth Amendment.

72. Ind. Code § 3-11-10-24(a), as applied during the pandemic to Plaintiffs and other similarly situated voters in such a manner to prohibit and/or exclude Plaintiffs and those similarly situated from voting by mail in the 2020 general election, arbitrarily discriminates between categories of qualified voters.

73. Ind. Code § 3-11-10-24(a), as applied during the pandemic to Plaintiffs and other similarly situated voters, denies them any reasonable alternative means of voting that does not endanger their own or others' health, safety, and lives.

74. Ind. Code § 3-11-10-24(a), as applied during the pandemic to Plaintiffs and the class of similarly situated qualified voters they represent, denies to them and all other persons who are practicing social distancing the same privileges already extended to voters age 65 and over and to the other classifications of voters expressly permitted by Indiana law to vote by mail.

75. Accordingly, Ind. Code § 3-11-10-24 (a), as applied during the pandemic, constitutes a significant and non-trivial burden on Plaintiffs' fundamental right to vote.

76. These burdens on Plaintiffs' right to vote are no less than the burdens imposed on voters already entitled by I.C. § 3-11-10-24 (a) to vote by mail.

77. Pursuant to *Burdick v. Takushi,* 504 U.S. 428, 439 (1992), and *Crawford v. Marion County Election Board,* 553 U.S. 181, 203 (2008), this Court must consider the "precise interests" advanced by the challenged election statute, which allows other voters, but not the Plaintiffs and those similarly situated, to vote by mail. This involves determining the legitimacy and strength of the State's asserted interests that are served by the challenged statute, as well as "the extent to which those interests make it necessary to burden Plaintiffs' rights." *Burdick,* 504 U.S. at 434.

78. The individual Plaintiffs and organizational Plaintiff's members are harmed because, absent this Court's intervention to permit them to vote by mail, all face a substantial and grave risk to their health, and the health of their loved ones, by exercising their right to vote.

79. At all times relevant to this action, Defendants have acted or failed to act under color of state law, and are persons within the meaning of 42 U.S.C. § 1983.

80. Any governmental interest served by denying Plaintiffs and other voters similarly situated the right to vote by mail is outweighed by the burdens placed on Plaintiffs' right to vote during the pandemic.

81. Granting a privilege to those voters who fall within one of the 13 categories set forth in I.C. § 3-11-10-24(a) but not to other voters such as Plaintiffs, for whom voting in person is equally difficult or impossible due to the pandemic, is sufficient disparate treatment of voters so as to warrant judicial extension of the privilege to vote by mail to all voters during the pandemic, rather than withdrawing the benefits of casting a vote by mail from the already-entitled categories of voters. *Heckler v. Mathews,* 465 U.S. 728, 740 (1984); *Califano v. Westcott,* 443 U.S. 76, 89 (1979).

82. Absent this Court issuing a preliminary injunction, Plaintiffs will suffer irreparable harm; any remedies at law would provide no or inadequate relief; Plaintiffs have a reasonable likelihood of success on the merits; the balance of harms favors the Plaintiffs; and the public interest would be served by the issuance of preliminary injunctive relief Plaintiffs seek.

### Count II
### Violation of the Indiana Constitution
### Brought Pursuant to State Law against all Defendants

83. Plaintiffs incorporate by reference the allegations of paragraphs 1-82.

84. The Equal Privileges and Immunities Clause of the Indiana Constitution, prohibits the granting "to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Art. 1, § 23. The Indiana Constitution also requires that all elections in Indiana be "free and equal." Art. 2, § 1.

85. There are no inherent differences between Plaintiffs and those voters already statutorily entitled to vote by mail by I.C. § 3-11-10-24 (a), as the pandemic makes voting for each equally difficult or impossible. Neither is this disparate treatment reasonably related to any distinguishing characteristics among those entitled to vote by mail and those, such as Plaintiffs, who are not.

86. The preferential treatment accorded to those already entitled to vote by mail is not equally available to all voters such as Plaintiffs and other similarly situated Hoosier voters who wish to maintain social distancing for as long as the virus is continuing to be transmitted, and absent an effective vaccine or treatment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) enter an order declaring that as applied during the pandemic, Ind. Code § 3-11-10-24(a), insofar as it grants to some voters, but not to Plaintiffs and the class they purport to

represent, the right to vote by mail in the November 3, 2020, violates the Equal Protection Clause of the Fourteenth Amendment and the Equal Privileges and Immunities Clause of the Indiana Constitution;

    (b)  preliminarily enjoin Defendants to extend the privilege of voting by mail during the pandemic to Plaintiffs and all Indiana voters in the November 3, 2020, general election;

    (c)  preliminarily enjoin Defendants to advise all county clerks in Indiana to permit no-excuse absentee voting by mail in the November 3, 2020;

    (d)  award Plaintiffs their reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

    (e)  grant Plaintiffs such other or further relief as may be warranted.

                                                         Respectfully submitted,

*s/ William R. Groth*
William R. Groth
MACEY SWANSON LLP
445 N. Pennsylvania St., Suite 401
Indianapolis, IN  46204
Tel: (317) 637-2345, Ext. 132
E-mail: WGroth@fdgtlaborlaw.com

*s/ Mark W. Sniderman*
Mark W. Sniderman
FINDLING PARK CONYERS
 WOODY & SNIDERMAN, P.C.
151 N. Delaware Street, Ste. 1520
Indianapolis, IN  46204
Tel: (317) 231-1100
E-mail: msniderman@findlingpark.com

*Attorneys for Plaintiffs*