## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

BARBARA TULLY, KATHARINE BLACK,  )
MARC BLACK, SHELLY BROWN,   )
DAVID CARTER, REBECCA GAINES,  )
JANICE JOHNSON, ELIZABETH KMIECIAK, )
CHAQUITTA MCCREARY,    )
KATHERINE PAOLACCI, DAVID SLIVKA, )
DOMINIC TUMMINELLO, and   )
INDIANA VOTE BY MAIL, INC., individually, )
 and on behalf of those similarly situated, )
         )
    Plaintiffs,    )
         )
   -vs-      ) Case No. 1:20-cv-01271-JPH-DLP
         )
PAUL OKESON, S. ANTHONY LONG,  )
SUZANNAH WILSON OVERHOLT, and  )
ZACHARY E. KLUTZ, in their official  )
capacity as members of the Indiana  )
Election Commission, and    )
CONNIE LAWSON, in her official   )
capacity as the Indiana Secretary of State, )
         )
   Defendants.   )

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

Come Now Plaintiffs and the putative class, by counsel, and hereby file their

Memorandum of Law in support of their motion for class certification. [Filing No. 17.]

## I. INTRODUCTION

Plaintiffs are Indiana residents eligible to vote in the 2020 general election: they want to

exercise their constitutional right, and civic duty, to vote, but to not get sick or die, or infect

others as a result of doing so. Plaintiffs submit this memorandum in support of their motion to

certify a class under Federal Rule of Civil Procedure 23(b)(2). Plaintiffs seek declaratory and

injunctive relief on behalf of the proposed class under Rule 23(b)(2) to remedy the violations of

their rights they hold under the Fourteenth and Twenty-Sixth Amendments to the United States Constitution, and the Indiana Constitution. Plaintiffs seek damages neither for themselves, nor for members of the class. Rule 23(b)(2) certification is appropriate because Plaintiffs seek only injunctive and declaratory relief on behalf of a class of individuals with respect to a general course of conduct: Defendants' maintenance of unlawful policies or practices for voting in the time of a pandemic.  This action, like many civil rights actions challenging courses of conduct by state officials, is especially appropriate for Rule 23(b)(2) treatment because of the potential for common resolution.

 Thus, the Court should grant Plaintiffs' motion for class certification.

## II.    BACKGROUND

### A.    Indiana Law

Indiana law entitles some, but not all, registered voters to vote by mail. Ind. Code § 3-11-10-24(a) describes thirteen (13) categories of voters who are "entitled" to vote by mail. One of those categories is a "voter with disabilities." *Id.* at (a)(4). Another is a voter confined on election day to their residence "because of an illness or injury..." *Id.* at (a)(3). Those statutes do not define what constitutes "confined on election day to the voter's residence because of an illness or injury," or "voter with disabilities."

On March 25, 2020, the members of the Indiana Election Commission members ("IEC"), suspended statutory restrictions on voting by mail. They did so by ruling that the words "voter with disabilities" in Ind. Code § 3-11-10-24(a)(4) shall be construed to include any "voter who is unable to complete their ballot because they are temporarily unable to physically touch or be in safe proximity to another person." IEC Order 2020-37, Section 9A,

https://www.in.gov/sos/elections/files/Indiana%20Election%20Commission%20Order%202020 20-37.pdf, last visited April 20, 2020.

The IEC has not approved an order that would apply the foregoing definition to voters who vote in the November 3, 2020, general election; and the IEC's willingness to suspend restrictions on mail voting is highly uncertain, particularly in light of Secretary Lawson's April 16, 2020 letter to the U.S. Election Assistance Commission in which she requests $8 million for personal protective equipment and sanitation supplies for in-person early and in-person Election Day voting on November 3 and her declaration that Indiana is "not a vote by mail state" even though Indiana has used mail absentee voting for decades.

https://www.eac.gov/sites/default/files/paymentgrants/cares/IN_CARES_Disbursement_Req uestLetter.pdf (last visited June 15, 2020).

**B.     The Coronavirus Pandemic**

Jeffrey G. Jones, M.D., M.P.H., states that the "vast majority of Hoosiers are vulnerable" to COVID-19, a potentially fatal respiratory disease, which is "readily spread from person to person." [Declaration of Jeffery G. Jones, M.D., M.P.H., Filing No. 13-13, p. 9, ¶ 18.] COVID-19 is "highly likely" to be with us in November 2020, and the majority of Hoosiers will still be likely to be vulnerable to the disease. [*Id.*] In order to minimize the risk of the transmission, people need to "spend the shortest amount of time in the best ventilated, least contaminated environment, where the fewest number of people are generating the fewest virus particles." [*Id.*, p. 4, ¶ 8.] People are anxious about contracting the disease, and due to these fears, may refrain from entering polling places, which are not assured of meeting the recommended ventilation standards. [*Id.*, p. 9, ¶ 18.].]

Gregory Shufeldt, Ph.D., notes that Hoosiers who wish to vote in the November election are "likely to face unprecedented impediments to casting a vote in person due to the continued transmission of COVID-19." [Declaration of Gregory Shufeldt, Ph.D., Filing No. 13-14, p. 11, ¶ 58.] Even under conservative estimates, there are least tens of thousands of Indiana voters who

do not qualify under the current statutory entitlement to cast their vote by mail. [*Id.*, p. 10, ¶¶ 50-53.] Voters who are not currently entitled to vote by mail will have to choose between protecting their health and safety, and fulfilling their civic duty. [*Id.*, p. 12, ¶ 58.]

Medical experts, including Anthony S. Fauci, M.D., an immunologist who is head of the National Institute of Allergy and Infectious Diseases, has stated that "[w]e *will* have coronavirus in the fall. I am convinced because of the degree of transmissibility that it has, the global nature. What happens with that will depend on how we're able to contain it when it occurs." [Filing No. 6, p. ¶ 5.]

### C.    Plaintiffs and the Proposed Class

Named Plaintiffs include twelve (12) registered Indiana voters who have not reached the age of 65 and who are not otherwise entitled to vote by mail because they do not now, and are not expected on Election Day to, satisfy any of the categories of voters established by Indiana Code § 3-11-10-24(a), and thus be "entitled to vote by mail."[1] [Filing No. 6, p. 6, ¶¶ 23, 24; Filing Nos. 13-1 – 13-12, ¶¶ 3, 4.[2]] Each has serious concerns about being left with no alternative but to show up in person in what are reasonably expected to be crowded public polling places this fall to exercise their right to vote. Each individual Plaintiff wishes to vote by mail but under current Indiana law is not entitled to do so. [Filing Nos. 13-1 – 13-12, ¶¶ 3, 4.]

The named Plaintiffs seek certification of a class of similarly situated persons, defined as:

---

[1] Indiana Vote By Mail, Inc., a corporate entity, is the only Plaintiff not eligible to vote.
[2] Each of the individual Plaintiffs have executed a declaration, which were filed as exhibits to the Motion for Preliminary Injunction [Filing No. 13], as follows: Declaration of Barbara Tully [Filing No. 13-1]; Declaration of David Carter [Filing No. 13-2]; Declaration of Elizabeth Kmieciak [Filing No. 13-3]; Declaration of Janice Johnson [Filing No. 13-4]; Declaration of Marc Black [Filing No. 13-5]; Declaration of Katharine Black [Filing No. 13-6]; Declaration of Shelly Brown [Filing No. 13-7]; Declaration of Chaquitta McCreary [Filing No. 13-8]; Declaration of Dominic Tumminello [Filing No. 13-9]; Declaration of Rebecca Gaines [Filing No. 13-10]; Declaration of Katherine Paolacci [Filing No. 13-11]; and Declaration of David Slivka [Filing No. 13-12].

> All people who are or may subsequently become qualified to vote in the November 3, 2020, general election in Indiana, and who are not entitled to vote by mail because they do not satisfy any of the criteria of Ind. Code § 3-11-10-24(a)(1)-(13).

### D.    Defendants

Defendants Paul Okeson, S. Anthony Long, Suzannah Wilson Overholt, and Zachary E. Klutz, are the members of the IEC, which is charged with administering Indiana election laws. Ind. Code § 3-6-4.1-14 (a)(1). This includes adopting rules to "[g]overn the fair, legal, and orderly conduct of elections." *Id.* It also includes the power to adopt, by unanimous vote of its entire membership, temporary emergency rules "to implement a court order requiring [it]...to administer an election in a manner not authorized by this title," *id.* at -16, or in cases of a "natural disaster or other emergency." *Id.* at -17 (a). On March 25, 2020, the IEC suspended statutory restrictions on voting by mail by entering an emergency order that the words "voter with disabilities" in Ind. Code § 3-11-10-24(a)(4) shall be construed to include any "voter who is unable to complete their ballot because they are temporarily unable to physically touch or be in safe proximity to another person." IEC Order 2020-37, Section 9A. [Filing No. 6, p. 10, ¶ 44.] However, despite having met most recently on May 12, 2020, the IEC has failed to reach a bipartisan agreement to extend this interpretation for the November 3, 2020, general election.

Defendant Lawson is the Indiana Secretary of State and in that capacity, is the chief election official of the State. Ind. Code § 3-6-3.7-1. She is responsible for enforcing and implementing Indiana's election laws and her office routinely issues guidance to county election officials in each of Indiana's 92 counties on matters involving election administration.

### E.    The Instant Litigation

Plaintiffs filed this putative class action for claims arising out of federal and Indiana law, and Defendants' failure to take action to allow them to safely vote in the 2020 general election.

Plaintiffs assert the foregoing violates their rights guaranteed by the Fourteenth and Twenty-Sixth Amendments to the United States Constitution, as well as the Indiana Constitution, which prohibits the granting "to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens," (Art. 1, § 23), and which requires that all elections in Indiana be "free and equal." Art. 2, § 1.

Named Plaintiffs seek injunctive and declaratory relief. [Filing No. 6, pp. 1, 14, 17, 21.] As Plaintiffs move for class certification pursuant to Fed. R. Civ. P. 23(b)(2), they seek only injunctive and declaratory relief for the class as well. Plaintiffs assert Count I, violation of their Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, against all Defendants in their official capacities. [*Id.*, pp. 14-17.]

Count II is predicated on the violation of Plaintiffs' Twenty-Sixth Amendment rights, which prohibits a state from denying or abridging the right to vote of citizens who are eighteen years of age or older, "on account of age." [*Id.* at 17-20.]

Count III asserts a violation of the Privileges and Immunities Clause of the Indiana Constitution, which prohibits granting privileges or immunities to any citizen which do "not equally belong to all citizens"; and Article 2, § 1 of the Indiana Constitution, which requires that all elections in Indiana be "free and equal." [*Id.* at 20.]

## III.   ARGUMENT

### A.   The Standard for Class Certification

A court may certify a class if all four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – are satisfied, and at least one of the provisions of Rule 23(b) is met. Fed. R. Civ. P. 23(a) and 23(b); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

Under Rule 23(b)(2), Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360, 131 S. Ct. 2541, 2557 (2011).

Lastly, the party must show that the class is identifiable as a class. *Oshana*, 472 F.3d at 513. As demonstrated below, all the necessary requirements of Rule 23 are met in this case and the Class should accordingly be certified.

**B.   The Class Meets All the Requirements of Rule 23(a)**

**i.   Rule 23(a)(1) is Satisfied Because Joinder of All Members is Impracticable.**

The proposed class satisfies Rule 23(a)(1) because joinder of all class members is impracticable based on the number of class members, the geographic diversity of Class members and the inability of many class members to bring individual suits.

In order to satisfy the numerosity element, a plaintiff is not required to specify the exact number of persons in the class. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Nonetheless, it has been held that "generally, a class of at least forty members will satisfy the requirement." *McGarry v. Betcher*, No. 4:08-cv-0146, 2010 WL 1257446, at *3 (S.D. Ind. Mar. 24, 2010) (Young, J.) (citing cases). *See also*, e.g., *EEOC v. Printing Indus. of Metro. D.C., Inc.*, 92 F.R.D. 51, 53 (D.D.C. 1981) ("[A]s few as 25-30 class members should raise a presumption that joinder would be impracticable and that the class should be certified") (citing Newburg, Class Actions § 1105(b), at 174 (1977)); Newberg on Class Actions § 25:4 (4th ed.) ("Courts have taken a common-sense approach in assessing impracticability of joinder," including in "[c]riminal justice

class action suits… involv[ing] issues of concern common to inmate populations of particular institutions or institutional systems which are subject to general conditions and policies") (citation omitted).

Plaintiffs estimate there are at least **387,868 members** of the proposed class. Professor Shufeldt has estimated the approximate number of Indiana voters who will be unable to vote by mail in the 2020 general election. [Filing No. 13-14, pp. 9-10.] Starting with Marion County alone, Professor Shufeldt conservatively began with the average votes cast over the last four presidential general elections, 297,207 (as opposed to using the average number of registered voters). [*Id.*, p. 9, ¶¶ 43-44.] After deducting the number of voters who are 65 or over, or who have a disability, he was left with 228,849 voters. [*Id.*, pp. 9-10, ¶¶ 45-47.] Estimating the remaining voters who satisfy the other statutory criteria is less straightforward, but even if 50% of them meet the criteria to vote absentee, there are still approximately 114,424 voters in Marion County alone who would not be eligible to cast an absentee ballot. [*Id.*, p. 10, ¶ 48.] Professor Shufeldt performed the same analysis for the State of Indiana, except using an even more conservative estimate: after estimating the number of voters who are 65 or over, or who have a disability, and then assuming 75% of the remaining voters do meet another statutory criteria, there would still be 387,868 likely voters in Indiana who would not be eligible to cast an absentee ballot. [*Id.*, p. 10, ¶¶ 49-52.]

Although this estimated number of class members is substantial, even "[a] relatively small group may form a class if other considerations make joinder impracticable." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) (quoting *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988)). The proposed class is unwieldy in ways that satisfy Rule 23(a)(1) requirements. Class members are widely scattered throughout the State of Indiana. *See Markham v. White*, 171 F.R.D. 217, 221 (N.D. Ill. 1997) (impracticality of joinder is increased by fact that class members reside

in five different states). *See also* Newberg on Class Actions § 25:4 (4th ed.) ("the geographic dispersion and difficulty with which class members would be identified supported a finding of joinder impracticability") (citation omitted).

The proposed class also includes persons whose identities are currently unknown because they are not yet registered to vote but will be in the future. *See Postawko v. Missouri Dept. of Corrections*, 2:16-CV-04219-NKL, 2017 WL 3185155 at *5 (W.D. Mo. July 26, 2017*)* ("[j]oinder of all members may be impracticable where the class includes individuals who may become members in the future but who are currently unidentifiable.") (citation and quotation omitted). *See also* Newberg on Class Actions § 25:4 (4th ed.) ("Even a small class of fewer than 10 actual members may be upheld if an indeterminate number of individuals are likely to become class members in the future") (citation omitted). Because the population of registered voters is constantly changing, so too are members of the proposed class. *See Postawko*, 2017 WL 3185155 at *6 (numerosity satisfied by, inter alia, "the inherently fluid nature of this class").

It is likely that many individual class members may not have the ability and/or financial resources to institute individual suits to seek their own injunctive relief. *See, e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (other "[r]elevant considerations include… financial resources of class members [and] the ability of claimants to institute individual suits…")

Given the size of the proposed class, the geographic diversity of its members, the yet-to-be-known identities of future members, the fluidity of its membership, and the many challenges that individual class members face in bringing individual suits, Rule 23(a)(1)'s numerosity requirement is satisfied.

     **ii.**    **Rule 23(a)(2) is Satisfied Because There are Questions of Law and Fact Common to the Class.**

A class action requires that there be "questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). Commonality is satisfied when there is a "common nucleus of operative fact" that is, a "common question which is at the heart of the case." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready–Mixed Concrete Antitrust Litig.,* 261 F.R.D. 154, 167 (S.D. Ind. 2009). An important factor in commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2015) (citing *Wal–Mart Stores v. Dukes*, 131 S.Ct. at 2551).

Commonality is satisfied here because of the multiple questions of fact and law common to the class. Common questions of fact include, but are not limited to: (1) whether a voter is entitled to vote in the 2020 general election; (2) whether a voter is entitled to vote absentee by mail in the 2020 general election; (3) whether voters are in danger of contracting or spreading the Coronavirus by the act of in-person voting; and (4) whether Coronavirus will still be spreading in the fall of 2020. Common questions of law include, but are not limited to, whether Indiana law and Defendants' actions or omissions violate the Fourteenth Amendment, the Twenty-Sixth Amendment, or the Indiana Constitution.

If the answer to one or more of these questions is "yes," the Court may resolve the case by requiring Defendants to enact a policy for voters that does not violate the Fourteenth Amendment, the Twenty-Sixth Amendment, or the Indiana Constitution. *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 434 (7th Cir. 2015).

### iii.    Plaintiffs Satisfy Rule 23(a)(3) Because Their Claims are Typical of those in the Class.

Rule 23(a) also requires the representative parties' claims or defenses to be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). The typicality prerequisite is met if the named plaintiffs' claims "arise[ ] from the same ... practice or course of conduct that gives rise to the claims of other class members and ... are based on the same legal theory." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quotation omitted); *Estate of VanDam ex rel. Horizon Tr. & Inv. Mgt., N.A. v. Daniels*, 278 F.R.D. 415, 424 (S.D. Ind. 2011). Although the named plaintiffs' claims need not be identical to all class members' claims, they must be "substantially similar" so that the interests of the class and its representatives may be aligned.  *In re Ready–Mixed Concrete Antitrust Litig.,* 261 F.R.D. at 168.

Plaintiffs' claims satisfy Rule 23(a)(3). Their claims — that Indiana law and the Defendants' actions or omissions regarding absentee voting violate the Fourteenth Amendment, the Twenty-Sixth Amendment, and/or the Indiana Constitution– are identical to the claims of the class that they seek to represent. Plaintiffs' claims turn on the same legal theory as the class claims. *See Estate of VanDam*, 278 F.R.D. at 425 (granting in part motion to certify class consisting of persons allegedly injured by stage collapse at 2011 Indiana State Fair, where Rule 23(a)(3) typicality requirement was satisfied for the limited purpose of determining the constitutionality of Indiana's damages cap for tort claims). If Plaintiffs establish that the challenged Indiana statute, and/or the actions or omissions of Defendants are unconstitutional, and that they are entitled to injunctive and declaratory relief, the claims of the class will necessarily succeed and the class members will reap the benefits of the same injunctive and declaratory relief.

### iv.    Plaintiffs Satisfy Rule 23(a)(4) Because They Are Members of the Class with Common Interests to the Unnamed Class Members and Will Vigorously Prosecute the Class' Interests.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). A class is not fairly and adequately represented

if class members have antagonistic or conflicting claims. *Rosario v. Livaditis*, 963 F.2d at 1018 (citation omitted).

The individual Plaintiffs are members of the proposed class. [Filing Nos. 13-1 − 13-12, at ¶¶ 1, 3, 4.] They seek the same injunctive relief for themselves and class members alike. *Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); Newberg on Class Actions § 3:59 (5th ed.). Because Plaintiffs' voting rights are at stake, they have the highest incentive to vigorously litigate this case to achieve favorable relief from the Court. The individual Plaintiffs' goals in this action are to gain injunctive relief for themselves and class members. [Filing Nos. 13-1 − 13-12, at ¶ 5.] They share a goal with each other and all members of the proposed class: "to have the option to safely vote by mail and to avoid voting in person, which, due to the possibility of contracting COVID-19, may endanger me, my family, poll workers and other people, and which would expose all of us to a substantial risk of serious harm." [*Id.*, at ¶ 6.] Plaintiffs identify no actual or potential conflict of interest between themselves and class members, and understand that, should a class be certified, they "will have the responsibility to fairly and adequately represent the class and to stay engaged with the lawsuit," and have sworn they "will honor and fulfill that responsibility." [*Id.*, at ¶¶ 7, 9.]

Plaintiffs' counsel are unaware of any interests of Plaintiffs or Plaintiffs' counsel adverse to, or in conflict with those of the class. [Declaration of William R. Groth, Filing No. 17-1 at 2, ¶ 4; Declaration of Mark W. Sniderman, Filing No 17-2 at 2, ¶ 4.]

The requirement of adequacy of representation is also met by the qualifications of the proposed class counsel. Attorney William R. Groth has extensive experience litigating complex civil rights matters in federal courts. [Filing No. 17-1 at 1-2, ¶ 2.] He frequently represents plaintiffs in § 1983 cases, especially those involving voting rights. [*Id.* at 2, ¶ 2.] Attorney Mark W. Sniderman also has extensive experience litigating complex civil rights matters in federal

courts. [Filing No. 17-2 at 1-2, ¶ 2.] He frequently represents plaintiffs in § 1983 cases involving excessive force, jail or prison conditions, and voting rights, and was appointed co-class counsel in the matter styled *Michael Ray Stafford, et al. v. Robert E. Carter, Jr., et al.*, No. 1:17-cv-00289-JMS-MJD, United States District Court for the Southern District of Indiana. [*Id.* at 2, ¶ 2.] Attorneys Groth and Sniderman also served as co-counsel, with others, for plaintiffs in *Lee v. Abbott,* Case No. 14-2388, U.S. District Court for the Southern District of Indiana, which was consolidated on appeal with *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014) (cert. denied). [Filing No. 17-2 at 2, ¶ 2.]

Counsel will vigorously represent the proposed class to secure appropriate relief for all its members. [Filing No. 17-1 at 2, ¶ 4; Filing No. 17-2 at 2, ¶ 4.] This is demonstrated by, inter alia, the work Plaintiffs' counsel have done to date in identifying, investigating, and litigating the Plaintiffs' and proposed class' claims in the instant action. *See Eirhart v Libbey-Owens-Ford Co.*, 89 F.R.D. 424, 428 (N.D. Ill. 1981) (proposed class counsel can adequately represent the class under Rule 23(a)(4) where, inter alia, counsel "has demonstrated a great deal of perseverance and vigor in her pursuit of this action").

### C. Plaintiffs Satisfy the Requirements of Rule 23(b)(2) Because Injunctive and Declaratory Relief Would Provide Relief to All Class Members.

Rule 23(b)(2) authorizes a class action if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds generally applicable to the class" and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2).  "23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Local No.* 1, 797 F.3d at 441; *Estate of VanDam,* 278 F.R.D. at 426 ("[t]he primary limitation imposed by this [Rule 23(b)(2)] is that injunctive or declaratory relief must predominate as the class's desired remedy") (citation omitted).

Plaintiffs here challenge Indiana law and Defendants' statewide policies or omissions for voting safely. Plaintiffs satisfy the requirements of Rule 23(b)(2) because the final injunctive and declaratory relief they seek would apply to class members as a whole. If Plaintiffs show Defendants have violated their or the class members' rights under the Fourteenth Amendment, the Twenty-Sixth Amendment, or the Indiana Constitution, then favorable injunctive and declaratory relief would provide appropriate relief to all class members simultaneously. *Chicago Teachers Union, Local No. 1*, 797 F.3d at 442-43 (23(b)(2) (class action maintainable where plaintiffs seek the same declaratory and injunctive relief for everyone in proposed class). For example, this Court could compel the Defendants to allow all class members to vote absentee, so as to not violate the Fourteenth Amendment, the Twenty-Sixth Amendment, or the Indiana Constitution.

### D.   Members of the Proposed Class are Ascertainable by Reference to Wholly Objective Criteria.

In addition to the above requirements, the party seeking to certify a class must show "that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513; followed by *Lindh v. Warden, Fed. Correctional Inst., Terre Haute, Ind.*, 2:14-CV-00142-JMS-WGH, 2014 WL 7334745, at *1 (S.D. Ind. Dec. 19, 2014), class decertified on other grounds, 2015 WL 5009244 (S.D. Ind. Aug. 20, 2015). Rule 23 requires that a class be defined "clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) (classes must not be vague, defined by subjective criteria, or defined in terms of success on the merits). The proposed class meets this requirement.

The members of Plaintiffs' proposed class are ascertainable by reference to objective criteria, namely, whether: (a) a person is registered and eligible to vote in the state of Indiana; and (b) whether they are not entitled to vote by absentee ballot. *See Lau v Arrow Fin. Services, LLC,* 245 F.R.D. 620, 624 (N.D. Ill. 2007) (proposed class was defined by objective criteria, namely,

whether a claimant: (a) had received a certain debt collection letter, and (b) had his or her debt discharged in bankruptcy). *Cf. De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (proposed class consisting of "residents of this State active in the 'peace movement'…" is not adequately defined and its members are not clearly ascertainable given, inter alia, "the patent uncertainty of the meaning of 'peace movement' in view of the broad spectrum of positions and activities which could conceivably be lumped under that term…"), cited with approval by *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981).

This clear definition of the putative class is enough. To administer this case, it is "not necessary to define the class with greater precision," than that proposed by the Plaintiffs' class definition. *See Frank v. Walker*, 196 F.Supp.3d 893, 902 (E.D. Wis. 2016). Neither does the decision to certify the proposed class require the Court to assess subjective criteria such as class members' state of mind. *Cf. Simer*, 661 F.2d at 669-670 (case was not appropriate for class action where putative class consisted of persons who: (a) were aware that they qualified for certain assistance to pay their energy bills, but; (b) were discouraged from applying for such assistance because of the existence of the invalid regulation).

Nor is the class vague: it is neither "amorphous" or "imprecise." *Mullins*, 795 F.3d at 659 (internal citations omitted). Because certification is sought pursuant to 23(b)(2), the distribution of damages to putative class members will not be at issue: instead, if Plaintiffs are successful on the merits and the relief sought, every registered voter eligible to vote in the 2020 general election will be entitled to vote by mail. The State and its voters make the distinction on the criteria suggested here every election, in determining who may and may not vote absentee by mail. And the class is not defined in terms of success on the merits.

Here, proposed class members have been, or will be, registered and eligible to vote, and on the voting rolls maintained by the Defendants. Members of the proposed class are and can be

ascertained by using objective criteria, and the proposed class is fully and readily identifiable as a class.

## IV.   CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Motion for Class Certification, certify the class proposed by Plaintiffs, appoint the named individual Plaintiffs as class representatives and appoint undersigned counsel as class counsel.

Respectfully submitted,

*s/ William R. Groth*
William R. Groth
MACEY SWANSON LLP
445 N. Pennsylvania St., Suite 401
Indianapolis, IN  46204
Tel: (317) 637-2345, Ext. 132
E-mail: WGroth@fdgtlaborlaw.com

*s/ Mark W. Sniderman*
Mark W. Sniderman
FINDLING PARK CONYERS
 WOODY & SNIDERMAN, P.C.
151 N. Delaware Street, Ste. 1520
Indianapolis, IN  46204
Tel: (317) 231-1100
E-mail: msniderman@findlingpark.com

*Attorneys for Plaintiffs*