UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, ELIZABETH KMIECIAK, CHAQUITTA MCCREARY, DAVID SLIVKA, DOMINIC TUMMINELLO, and INDIANA VOTE BY MAIL, INC., individually, and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> -vs- <br><br> PAUL OKESON, S. ANTHONY LONG, SUZANNAH WILSON OVERHOLT, and ZACHARY E. KLUTZ, in their official capacity as members of the Indiana Election Commission, and CONNIE LAWSON, in her official capacity as the Indiana Secretary of State, <br><br> Defendants. | Case No. 1:20-cv-01271-JPH-DLP |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Come Now Plaintiffs and the putative class, by counsel, and hereby file their Reply in Support of Motion for Class Certification. For the reasons set forth below, as well as those in Plaintiffs' Memorandum in Support of Motion for Class Certification ["Memorandum," Filing No. 18], the Court should grant Plaintiffs' Motion for Class Certification ["Motion," Filing No. 17].

**I.    INTRODUCTION**

Plaintiffs are Indiana residents eligible to vote in the 2020 general election. They want to exercise their constitutional right, and civic duty, to vote. But as the COVID-19 pandemic continues to impact Indiana with ever-increasing severity, they do not want to get sick or die, or risk infecting others, as a result of voting at a public polling place. They recognize that there is a

solution to this dilemma in the form of providing all Hoosiers who are eligible to vote with the option of voting via absentee ballot by mail. Accordingly, Plaintiffs seek declaratory and injunctive relief on behalf of the putative class under Rule 23(b)(2) to remedy the Defendants' violations of their rights under the Fourteenth and Twenty-Sixth Amendments to the United States Constitution, and the Indiana Constitution. Rule 23(b)(2) certification is appropriate because Plaintiffs seek only injunctive and declaratory relief on behalf of a class of individuals with respect to the Defendants' general course of conduct: denying class members the choice of voting absentee by mail during the upcoming general election notwithstanding the ongoing COVID public health emergency.

Defendants argue that Plaintiffs do not satisfy the requirements of Rule 23(a), because Plaintiffs did not establish that: (1) the putative class is sufficiently numerous; (2) questions of fact and law are common between the named Plaintiffs and the class; (3) the claims of the named Plaintiffs are typical of the claims of the class; and (4) named Plaintiffs will adequately protect the interests of class members. But Defendants ignore Plaintiffs' evidence and offer no evidence of their own in support of their arguments. Instead, they rely only (and improperly) on mere speculation.

Even worse, Defendants misunderstand the proposed class definition and the relevant class certification standards. The record and expert evidence manifestly support the conclusion that the putative class is sufficiently numerous, containing hundreds of thousands of members. Moreover, although Plaintiffs need show only one common question of law or fact to satisfy Rule 23, there are multiple common questions involved here. Further, the injury alleged by Plaintiffs—unequal treatment and an undue burden on their right to vote—is the same as the injury to class members. The claims of the named Plaintiffs are identical to—and certainly typical of—those made on behalf of the putative class. And the uncontradicted record evidence demonstrates the Plaintiffs will

adequately represent the interests of the class: they do not seek to deprive any Hoosier voter of the choice to vote in person or otherwise seek to restrict the manner of voting of any Hoosier. Rather, Plaintiffs seek only to require Defendants to allow no-excuse absentee voting by mail for the upcoming general election—as Defendants already allowed for the June 2, 2020 primary election—to give members of the class the *choice* to vote by mail and to avoid the risk of contracting COVID at a polling place.

By this lawsuit, Plaintiffs seek to obtain declaratory and injunctive relief to remedy violations of the Fourteenth and Twenty-Sixth Amendments that affect—at minimum—hundreds of thousands of Hoosiers, and to obtain relief for voters throughout the entire state. This is a textbook case for class-wide relief and the Court should grant Plaintiffs' motion for class certification.

## II.   ARGUMENT

Plaintiffs proposed a class definition as follows:

> All people who are or may subsequently become qualified to vote in the November 3, 2020, general election in Indiana, and who are not entitled to vote by mail because they do not satisfy any of the criteria of Ind. Code § 3-11-10-24(a)(1) - (13).

[Filing No. 17, p. 2.]

The proposed class meets the requirements of Rules 23(a) and 23(b)(2), and is identifiable as a class by reference to wholly objective criteria. Defendants do not contest that the class is ascertainable and that Plaintiffs meet the requirements of Rule 23(b)(2), so this reply focuses on the requirements of Rule 23(a).

### A.   The Putative Class is Sufficiently Numerous

The putative class is sufficiently numerous for the purposes of Rule 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient

3

to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (citation and quotation omitted). In their opening Memorandum, Plaintiffs estimated that there are more than 387,000 members of the proposed class. To support this proposition, Plaintiffs provided the calculations and estimates of Gregory Shufeldt, Ph.D. [Filing No. 18 at 8, Filing No. 13-14, pp. 9-10.]

In response, the Defendants argue that Plaintiffs have not established numerosity, because they supposedly offered "nothing more than conclusory allegations." [Filing No. 50 at 3.] Defendants argue that Plaintiffs "presented no evidence" of the number of voters in the putative class and that thus, numerosity is not established. [Filing No. 50 at 4.]

Defendants are incorrect for at least four reasons. First, they completely ignore, and offer no evidence to rebut, the testimony of Plaintiffs' expert Dr. Shufeldt, who provided detailed and specific information establishing the large size of the proposed class. [Filing No. 13-14, pp. 9-10.] That unrebutted evidence easily satisfies the numerosity requirement. Beginning with Marion County, Professor Shufeldt calculated the average votes cast over the last four presidential general elections to be 297,207. [*Id.*, p. 9, ¶¶ 43-44.] After subtracting the number of voters who are 65 or over and conservatively estimating the number of remaining voters who could meet the other statutory criteria to vote absentee, there are still approximately 114,424 voters—in Marion County alone—who would not be eligible to cast an absentee ballot. [*Id.*, p. 9-10, ¶¶ 45-48.] Professor Shufeldt performed the same analysis for the State of Indiana, using even more conservative estimates and found that there are some 387,868 likely voters in Indiana who—absent relief from this Court—would not be eligible to cast an absentee ballot by mail. [*Id.*, p. 10, ¶¶ 49-52.]

Defendants take issue with none of Dr. Shufeldt's opinions, calculations or assumptions. They do not object to his methodology, or claim his estimates are unreliable. They did not move

4

to strike his testimony as inadmissible, pursuant to Rule 702 of the Federal Rules of Evidence, or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Nor did they even take his deposition, or attempt to undermine or question his calculations or assumptions in any respect. Instead, the Defendants' Response [Filing No. 50] flat out ignores Dr. Shufeldt's testimony altogether. Plaintiffs' estimates of the class size are untouched—and completely unaddressed—by any criticism of Defendants.

Second, Defendants' reliance (at 3) upon *Valentino v. Howlett* is misplaced. The plaintiff in *Valentino* sought to certify a class of "all persons in Illinois who, after an automobile accident, have had their driver's license suspended and who have grounds to apply for a restricted driving permit." *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). But the plaintiff relied upon no evidence to establish the element of numerosity; instead, he alleged that the matter was "a proper class action on all issues as appears more fully from the allegations of the complaint." *Id*. The Seventh Circuit held that this was a "conclusory allegation," which was insufficient for the purpose of Rule 23(a)(1). *Id*. Here, by contrast, Plaintiffs do not rely on "mere conjecture" or "conclusory allegation[s]" to meet their burden on the numerosity issue; instead they offer unrebutted expert analysis on the issue.

Third, Defendants miscomprehend the proposed class definition: they claim the class is "*all registered Indiana voters* who will be ineligible to vote absentee *and will nevertheless wish to vote by mail*." [Filing No. 50 at 4 (emphasis in original).] They argue that because Plaintiffs "presented no evidence" how many will wish to vote by mail, numerosity is not established. [*Id*.] But the proposed class definition does not have the subjective component to which the Defendants ascribe it—the class is not defined by whether people "wish" to vote by mail, but rather by whether

5

people do not meet the criteria to do so. [Filing No. 17, p. 2.] Professor Shufeldt's unrebutted analysis provides manifest evidence that there are far more than 40 members of the putative class.

Finally, Defendants' numerosity argument is disingenuous because it contradicts arguments they make against the Plaintiffs' preliminary injunction motion, where the Defendants highlight the larger-than-usual number of Hoosiers who availed themselves of the ability to vote by mail in the primary election after the Defendants adopted no excuse absentee voting by mail for the primary. In their Response to Plaintiffs' Motion for Preliminary Injunction, Defendants complained of "unintended" problems encountered by counties allegedly caused by no-excuse absentee-by-mail voting in the June primary: higher costs of "hiring personnel to process and count the mail-in votes," postage, and security concerns because so many people availed themselves of the option to vote absentee by mail. [Filing No. 53 at 5.] Further proving the point that the putative class is numerous, Defendants cite statistics showing that Lake County alone mailed 31,704 absentee-by-mail ballots, compared to sending 3,298 in the 2016 primary election. [Filing No. 53-1, p. 2, ¶ 4.] Hendricks County sent 10,152 absentee-by-mail ballots, compared to sending 1,323 in the 2016 primary election. [Filing No. 53-2, p. 4, ¶ 4.] Hamilton County mailed approximately 40,000 absentee-by-mail ballots, compared to mailing approximately only 3,000 in the 2016 primary election. [Filing No. 53-3, p. 3, ¶ 7.] According to Defendants, because of the higher-than-usual number of absentee-by-mail ballots cast in the 2020 primary, Hamilton County had to use twice as many staff to process the ballots than in a typical primary. [*Id*., ¶ 8.] And statewide, 551,979 absentee ballots were cast by mail in the June primary, while 532,641 Hoosiers voted in person. [Filing No. 53-4, p. 4, ¶ 11.] The State worries that if no-excuse absentee voting by mail is extended to the general election, many Hoosiers will take advantage of that opportunity to exercise their right to vote by mail and "counties will likely experience extremely long reporting

delays," which could "potentially exceed the ten-day certification period…." [*Id.*, p. 5, ¶¶ 14, 15.] This evidence of the increased number of absentee-by-mail ballots associated with no-excuse absentee voting in the primary, and the Defendants' own predictions of greater numbers in the general election, all support Dr. Shufeldt's testimony and Plaintiffs' position that the numerosity requirement is obviously satisfied here.

Because the Response fails to account for Dr. Shufeldt's testimony regarding the size of the putative class; because it analogizes to an inapt case; because it relies upon the wrong class definition; and because Defendants themselves offer evidence that supports the proposition that the number of class members far exceeds 40, numerosity has been established.

      **B.**      **Questions of Law and Fact are Common to the Class**

The putative class presents common questions of law and fact pursuant to Rule 23(a)(2), which is satisfied when there is a "common nucleus of operative fact," or a "common question which is at the heart of the case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; instead, the Rule is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). That requirement is satisfied here because the class claims arise out of the same legal theory—alleged violations of the Fourteenth and Twenty-Sixth Amendments as well as the Indiana Constitution—and seek a class-wide injunction to remedy the harms.

Plaintiffs showed in their opening Memorandum that common questions of fact include (1) whether a voter is entitled to vote in the 2020 general election; (2) whether a voter is entitled to vote absentee by mail in the 2020 general election; (3) whether voters are in danger of contracting or spreading COVID-19 by the act of in-person voting; and (4) whether there is a reasonable

probability that COVID will still be spreading in Indiana in the fall of 2020. [Filing No. 18 at 10.] Common questions of law include, but are not limited to, whether Defendants' failure to act to allow no-excuse absentee voting by mail for members of the class violates the Fourteenth Amendment, the Twenty-Sixth Amendment, or the Indiana Constitution. [*Id.*]

Defendants do not claim the above questions of fact and law are not common, but instead argue Plaintiffs have not proven that members of the proposed class have suffered the same injury, or that they will even be injured. [Filing No. 50 at 5.] As such, they assert the class is overly inclusive, because the burdens on Plaintiffs and putative class members will "differ greatly based on the individual." [*Id.*]

While COVID-19 affects people in various ways, Defendants misconstrue the alleged injury to Plaintiffs and putative class members here: the harm is not that caused directly by COVID (though the illness caused by COVID can be very severe and even deadly). Instead, the harm alleged as the basis of the Plaintiffs' (and the class's) claims is impermissibly unequal treatment and the burden on the right to vote created by Defendants' failure, notwithstanding the COVID public health emergency, to allow no excuse absentee voting by mail for voters who would not otherwise qualify to vote absentee by mail. This injury is common to all Plaintiffs and members of the putative class.

Defendants' reliance on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011), for the proposition that Plaintiffs have not proved the class members have suffered the same injury [Filing No. 50 at 5], is unavailing. *Wal-Mart* holds that:

> Commonality requires the plaintiff to demonstrate the class members "have suffered the same injury". . . . Their claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

8

564 U.S. 338, 349-50 (citation and quotation omitted).

Common questions of fact and law reside at the heart of this case. Under the Fourteenth Amendment, Plaintiffs' and class members' right to vote will be impermissibly burdened if the State does not permit voters to vote by mail in order to avoid an increased risk of contracting COVID-19. Unless all Hoosiers are permitted to vote absentee-by-mail, without excuse, all class members will suffer this precise injury. Additionally, whether the rights of Hoosiers who are between 18 and 65 years of age have been denied or abridged for the purposes of the Twenty-Sixth Amendment, or whether the statute at issue violates the Indiana Constitution, are class-wide, common issues. When the questions of fact and of law at issue here are resolved, the common contention will also be resolved, class-wide, in one stroke. In fact, experience shows this to be true, as the Indiana Election Commission simply resolved these common concerns in its Order 2020-37 that extended no-excuse absentee voting by mail to all registered voters for the June 2020 primary election.

**C.   The Claims of the Named Plaintiffs are Typical of those of the Class**

Rule 23(a)(3) requires that "the claims…of the representative parties are typical of the claims…of the class." Fed. R. Civ. Pro. 23(a)(3). The requirements of commonality and typicality often merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The requirement "directs the district court to focus on whether the named representatives' claims have the same *essential characteristics* as the claims of the class at large."

*Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (emphasis added) (citation and quotation omitted).

Defendants argue (at 6) that the "same essential characteristics" requirement means that Plaintiffs' claims must arise from the "same event" or "course of conduct" and that all claims must be "based on the same legal theory." That standard is easily satisfied here because the claims arise from the same "course of conduct"—the denial of no-excuse absentee voting by mail in the 2020 general election—and are based on the same constitutional theories.

The typicality inquiry requires a comparison of named Plaintiffs' claims with those of the proposed class. *Muro*, 580 F.3d at 492. In their opening Memorandum, Plaintiffs explained that their claims that Indiana law and the Defendants' actions or omissions regarding absentee voting violate the Fourteenth Amendment, the Twenty-Sixth Amendment, and/or the Indiana Constitution are the same as the claims of the class that they seek to represent. [Filing No. 18 at 11.] The named Plaintiffs' claims share "essential characteristics" with those of the other class members because all class members assert that under the Fourteenth and Twenty-Sixth Amendments of the U.S. Constitution and under the Indiana Constitution, and that given the ongoing COVID public health emergency, they should be afforded the option of voting absentee by mail.

Although Defendants contest typicality, they do not identify any differences between the "essential characteristics" of the Plaintiffs' and class members' claims. Defendants argue (at 7) that the proposed class members' claims lack typicality because some class members are unwilling to vote in person "due to personal concerns," while others "are unable to risk entering a poll due to medical reasons." But that argument misses the point of the typicality inquiry. The particular "concerns" that cause individual voters to be afraid of contracting COVID and thus make them unwilling to go into a polling place to vote are not an "essential characteristic" of the class claims—

10

they do not affect the legal theories or relief sought here. And such particular "concerns" of class members provide no basis to doubt that "the interests of the class and the class representatives" are aligned "so that the latter will work to benefit the entire class through pursuit of their own goals." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. at 168 (citation and quotation omitted). That is all the typicality requirement requires. *See also Estate of VanDam ex rel. Horizon Tr. & Inv. Mgt., N.A. v. Daniels*, 278 F.R.D. 415, 424 (S.D. Ind. 2011) ("the named plaintiffs' claims need not be identical to all class members' claims" but must only "be 'substantially similar' so that the interests of the class and its representatives may be aligned").

Because the claims of the named Plaintiffs are typical of—indeed, they are identical to-- the claims of the class that they seek to represent, Rule 23(a)(3)'s requirement of typicality is fulfilled.

### D.     The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires the Court to determine if the representative parties will fairly and adequately protect the interests of the class. Adequacy is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation omitted). To adequately represent the class, the named plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citation and quotation omitted). The inquiry into adequacy "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim

11

and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20 (citation omitted).

Defendants do not challenge the adequacy of the named Plaintiffs' counsel. Instead, they argue that the named Plaintiffs will not "fairly or adequately protect the interests of all class members," because the proposed class is over-inclusive. [Filing No. 50 at 9.] Defendants assert that since some class members may intend to vote in person in the general election, and some may not agree that voting by mail should be available to all without excuse, then the named Plaintiffs will not fairly or adequately represent such members. [*Id.*]

Defendants identify no particular conflict-of-interest between representatives and members of the putative class. Instead, they point only to the abstract wishes of potential class members who may wish to vote in person regardless, and those who do not agree with the goals of no-excuse access to absentee-by-mail voting. But these theoretical disagreements create no conflict that renders the named Plaintiffs inadequate. With respect to those who wish to vote in person even if no-excuse absentee-by-mail voting is permitted, Plaintiffs do not seek to remove the right to vote in person and require that all voters vote by mail—they are seeking to assure that, given the ongoing COVID public health emergency, all voters have the *choice* to vote by mail. And if Plaintiffs prevail, and all those who wish to vote by mail have the opportunity to do so, the right to vote in person is arguably facilitated, not hindered, because lines will be shorter, and it will be easier to operate cleaner, safer and less-crowded polling places. And with respect to those putative class members who may not share the goals of the named Plaintiffs, such a theoretical conflict is present in every class; is an insufficient reason to find named Plaintiffs inadequate; and such class members should not possess a veto upon the legal claims of Plaintiffs. *See, e.g., Spano v. Boeing*

*Co.*, 294 F.R.D. 114, 121 (S.D. Ill. 2013) ("Courts do not deny class certification on speculative or hypothetical conflicts.").

The record evidence is clear: individual Plaintiffs are members of the proposed class, and seek the same injunctive relief for themselves and class members alike, [Filing Nos. 13-1 – 13-12, at ¶¶ 1, 3, 4; *Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997); Newberg on Class Actions § 3:59 (5th ed.).] The named Plaintiffs' rights are at stake, so they have the incentive to vigorously litigate this case to achieve favorable relief from the Court. Their goals are to gain injunctive relief for themselves and class members. [Filing Nos. 13-1 – 13-12, at ¶ 5.] They seek "to have the option to safely vote by mail and to avoid voting in person, which, due to the possibility of contracting COVID-19, may endanger me, my family, poll workers and other people, and which would expose all of us to a substantial risk of serious harm." [*Id.*, at ¶ 6.] Plaintiffs know of no actual or potential conflict of interest between themselves and class members, understand that, should a class be certified, they "will have the responsibility to fairly and adequately represent the class and to stay engaged with the lawsuit," and have sworn that they "will honor and fulfill that responsibility." [*Id.*, at ¶¶ 7, 9.]

Defendants have proffered no evidence of any actual, known conflict between named Plaintiffs and class members and they have not shown that the requested class relief would make some class members worse off in any concrete way. Defendants have identified no evidence that contradicts the record evidence cited above. And if Plaintiffs are successful, their efforts will only result in the expansion of rights and options of class members, who will be allowed to vote either absentee-by-mail, or in person.

The adequacy requirement has thus been met.

**III.     CONCLUSION**

For all the foregoing reasons, the Court should grant Plaintiffs' Motion for Class Certification, certify the class proposed by Plaintiffs, appoint the named individual Plaintiffs as class representatives and appoint undersigned counsel, William R. Groth and Mark W. Sniderman, as class counsel.

Respectfully submitted,

*s/ William R. Groth*
William R. Groth, Of Counsel
MACEY SWANSON LLP
445 N. Pennsylvania St., Suite 401
Indianapolis, IN  46204
Tel: (317) 637-2345, Ext. 132
E-mail: WGroth@fdgtlaborlaw.com


*s/ Mark W. Sniderman*
Mark W. Sniderman
FINDLING PARK CONYERS
 WOODY & SNIDERMAN, P.C.
151 N. Delaware Street, Ste. 1520
Indianapolis, IN  46204
Tel: (317) 231-1100
E-mail: msniderman@findlingpark.com

*Attorneys for Plaintiffs*