UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA TULLY, <br> KATHARINE BLACK, <br> MARC BLACK, <br> DAVID CARTER, <br> REBECCA GAINES, <br> ELIZABETH KMIECIAK, <br> CHAQUITTA MCCLEARY, <br> DAVID SLIVKA, <br> DOMINIC TUMMINELLO, <br> INDIANA VOTE BY MAIL, INC. <br> individually, and on behalf of those <br> similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PAUL OKESON, <br> S. ANTHONY LONG, <br> SUZANNAH WILSON OVERHOLT, <br> ZACHARY E. KLUTZ in their official <br> capacity as members of the Indiana <br> Election Commission, <br> CONNIE LAWSON in her official capacity <br> as the Indiana Secretary of State, <br><br> Defendants. <br><br> DISABILITY RIGHTS EDUCATION AND <br> DEFENSE FUND, INC, <br><br> Amicus. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:20-cv-01271-JPH-DLP <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER DENYING PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION**

Plaintiffs ask the Court to enter a preliminary injunction that would

require the State of Indiana to allow all Indiana voters to vote by mail in the

1

November 3, 2020 general election.  They argue that Indiana's absentee voting law—which allows only some Hoosiers to vote by mail—unconstitutionally burdens their right to vote.  Defendants—the Indiana Secretary of State and members of the Indiana Election Commission—respond that because Plaintiffs may vote in person, they are not likely to be able to show that the absentee voting law is unconstitutional and are not entitled to a preliminary injunction.  The question before the Court is not whether it would be wise for Indiana to allow everyone to vote by mail; that's a policy choice.  Rather, the legal issue is whether Plaintiffs are likely to be able to show that the Constitution requires Indiana to give all voters the right to vote by mail in the upcoming general election.  Plaintiffs have not made this showing so their motion for preliminary injunction is **DENIED**.  Dkt. [13].

# I.
# Facts and Background

The Court recites the undisputed facts for purposes of this preliminary injunction motion.  See *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981) (procedures are "less formal" and the evidence is "less complete" than at trial because the "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held").

COVID-19 needs little introduction—it is a respiratory disease that "readily spread[s] from person to person," dkt. 13-13 at 9 ¶ 18, and has caused a pandemic.  While COVID-19 has infected many Hoosiers, many more remain vulnerable.  *Id.* at 6 ¶ 11.  One way they can minimize the risk of infection is by

spending time "in the best ventilated, least contaminated environment where the fewest number of people are generating the fewest virus particles." *Id.* at 4 ¶ 8.

In response to COVID-19, the Election Commission—which is charged with administering Indiana's election laws—endorsed a broad reading of Indiana's vote by mail statute for Indiana's primary election. *See* Indiana Code § 3-11-10-24(a). That statute provides that "a voter who satisfies any of the following [13 categories] is entitled to vote by mail":

> (1) The voter has a specific, reasonable expectation of being absent from the county on election day during the entire twelve (12) hours that the polls are open.
>
> (2) The voter will be absent from the precinct of the voter's residence on election day because of service as:
>
> > (A) a precinct election officer under IC 3-6-6;
> >
> > (B) a watcher under IC 3-6-8, IC 3-6-9, or IC 3-6-10;
> >
> > (C) a challenger or pollbook holder under IC 3-6-7; or
> >
> > (D) a person employed by an election board to administer the election for which the absentee ballot is requested.
>
> (3) The voter will be confined on election day to the voter's residence, to a health care facility, or to a hospital because of an illness or injury during the entire twelve (12) hours that the polls are open.
>
> (4) The voter is a voter with disabilities.

(5) The voter is an elderly voter.[1]

(6) The voter is prevented from voting due to the voter's care of an individual confined to a private residence because of illness or injury during the entire twelve (12) hours that the polls are open.

(7) The voter is scheduled to work at the person's regular place of employment during the entire twelve (12) hours that the polls are open.

(8) The voter is eligible to vote under IC 3-10-11 or IC 3-10-12.

(9) The voter is prevented from voting due to observance of a religious discipline or religious holiday during the entire twelve (12) hours that the polls are open.

(10) The voter is an address confidentiality program participant (as defined in IC 5-26.5-1-6).

(11) The voter is a member of the military or public safety officer.

(12) The voter is a serious sex offender (as defined in IC 35-42-4-14(a)).

(13) The voter is prevented from voting due to the unavailability of transportation to the polls.

For Indiana's June 2020 primary election, the IEC ordered that any voter "unable to physically touch or be in safe proximity to another person" could vote by mail under subsection (4) as a voter with disabilities. Dkt. 6 at 10 (citing IEC Order 2020-37 § 9A). For the upcoming general election in November, the Election Commission has not renewed that order. *See* dkt. 66.

---

[1] An elderly voter is "a voter who is at least sixty-five years of age." Ind. Code § 3-5-2-16.5.

Plaintiffs are nine Indiana voters who do not expect to qualify to vote by mail in the general election under Indiana Code § 3-11-10-24. Dkt. 14 at 2 (citing declarations). They have filed a motion for preliminary injunction. Dkt. 13. Specifically, they ask the Court to enter an order requiring Indiana to implement "no-excuse absentee voting" that would allow any voter to vote by mail with an absentee ballot in the November 3, 2020 general election. Dkt. 62 at 5-6.

## II.
## Applicable Law

Parties may move under Federal Rule of Civil Procedure 65 for the issuance of a preliminary injunction. Determining whether a preliminary injunction is required involves a two-step inquiry, with a threshold phase and a balancing phase. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). At the threshold phase, the moving party must show that: (1) without the requested relief, it will suffer irreparable harm during the pendency of its action; (2) traditional legal remedies would be inadequate; and (3) it has "a reasonable likelihood of success on the merits." *Id.* If the movant satisfies these requirements, the court proceeds to the balancing phase "to determine whether the balance of harms favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id.*

## III.
## Discussion

"A preliminary injunction is an extraordinary remedy. . . . never to be indulged in except in a case clearly demanding it." *Id.* (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008). To be entitled to a preliminary injunction, Plaintiffs must first meet their threshold burden to show a reasonable likelihood of success on the merits, irreparable harm, and that traditional legal remedies would be inadequate. *Id.*

### A. Likelihood of success on the merits

Plaintiffs argue that they are likely to succeed on the merits of their Fourteenth Amendment and Twenty-Sixth Amendment challenges because Indiana has not consistently allowed voting by mail.[2] Dkt. 14 at 7–20. Defendants respond that Indiana has made reasonable distinctions in its vote-by-mail accommodations. Dkt. 53 at 9–19.

### 1. The right to vote does not include the right to vote by mail

The right to vote is a fundamental right central to our democracy. *Harper v. Va. State Bd. of Educ.*, 383 U.S. 663, 667 (1966). Less clear is whether that right is at stake here, so that's where the Court's analysis begins. Plaintiffs correctly "acknowledge that [Indiana] could likely eliminate all absentee voting if it wished." Dkt. 14 at 9. That's because unless a restriction

---

[2] Plaintiffs also allege a violation of Article 1 § 23 of the Indiana Constitution, dkt. 6 at 20, but they do not seek a preliminary injunction on that basis, *see* dkt. 13; dkt. 14.

6

on absentee voting "absolutely prohibit[s]" someone from voting, the right to vote is not at stake. *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969).

In *McDonald*, pretrial detainees in Illinois sought the ability to vote absentee. *Id.* at 803. Illinois allowed absentee voting for four classes of people, but the detainee plaintiffs did not fall into any of them. *Id.* at 803–04. The Supreme Court rejected the detainees' argument that Illinois' absentee voting privileges violated the Fourteenth Amendment's Equal Protection Clause. *Id.* at 806. The Court explained that "because of the overriding importance of voting rights, classifications 'which might invade or restrain them must be closely scrutinized and carefully confined.'" *Id.* at 807 (quoting *Harper*, 383 U.S. at 670). But Illinois' absentee voting provisions did not require that "exacting approach" because the detainees had not shown that they were absolutely prohibited from voting on election day. *Id.* at 808, 808 n.6. So it was "not the right to vote that [was] at stake . . . but a claimed right to receive absentee ballots." *Id.* at 807.

Plaintiffs argue that the Supreme Court has "limited *McDonald*'s holding to its facts." Dkt. 14 at 12–13. In *Goosby v. Osser*, however, the Court confronted a different factual situation because the plaintiffs had alleged that "the Pennsylvania statutory scheme absolutely prohibit[ed] them from voting." 409 U.S. 512, 521 (1973). The Court's limited holding at the preliminary stage of that case was only that—because of that allegation—the plaintiffs' claim was not "wholly insubstantial" or "obviously frivolous" under *McDonald*. *Id.* at 518,

7

521–22. Similarly, in *Hill v. Stone*, the Court did not cabin *McDonald*, but summarized it as addressing "whether pretrial detainees in Illinois jails were unconstitutionally denied absentee ballots" when "there was nothing in the record to indicate that the challenged Illinois statute had any impact on the appellants' exercise of their right to vote." 421 U.S. 289, 300 n.9 (1975). Those cases therefore did not overrule *McDonald* or limit it to its facts.

Moreover, in *Griffin v. Roupas*, working mothers sought expanded voting options "that would allow people [to vote] who find it hard for whatever reason to get to the polling place on election day." 385 F.3d 1128, 1129–30 (7th Cir. 2004). The Seventh Circuit found no equal protection violation because, among other reasons, "unavoidable inequalities in treatment, even if intended in the sense of being known to follow ineluctably from a deliberate policy, do not violate equal protection." *Id.* at 1132.

The same is true here. Plaintiffs do not contend that they are absolutely prohibited from voting. Rather, they contend that the constitution requires the state to allow all voters to vote by mail. Dkt. 14 at 11. Since Plaintiffs really seek an expansion of absentee voting privileges, dkt. 6 at 21; dkt. 13, it is "not the right to vote that is at stake here but a claimed right to receive absentee ballots." *McDonald*, 394 U.S. at 807. When, as here, the fundamental right to vote is not at stake, Indiana has "wide leeway . . . to enact legislation that appears to affect similarly situated people differently." *Id.*

### 2. Plaintiffs are not likely to succeed on their equal protection claim

Plaintiffs contend that, under the Constitution, all voters must be allowed to vote by mail in the general election because of COVID-19. Dkt. 6 at 21; dkt. 13. They argue that their equal protection claim should be evaluated under the *Anderson–Burdick* framework, which balances the burdens on the right to vote against the state's interests that may justify those burdens. Dkt. 14 at 7; see *Burdick v. Takushi,* 504 U.S. 428 (1992); *Anderson v. Celebrezze,* 460 U.S. 780 (1983). Defendants respond that the decision not to expand voting by mail does not implicate the right to vote, so the *Anderson–Burdick* framework does not apply. Dkt. 53 at 16.

It is not necessary for the Court to decide whether the *Anderson–Burdick* framework applies here because Plaintiffs have not shown a reasonable likelihood of success on the merits under either *Anderson–Burdick* or *McDonald*.[3] While election laws "invariably impose some burden on individual voters," those burdens do not necessarily "compel close scrutiny." *Burdick,* 504

---

[3] The Supreme Court has applied *Anderson–Burdick* when "a challenged regulation burdens First and Fourteenth Amendment rights," *Burdick,* 504 U.S. at 434, and the Seventh Circuit has explained that it applies "to *all* First and Fourteenth Amendment challenges to state election laws," *Acevedo v. Cook Cty. Officers Electoral Bd.,* 925 F.3d 944, 948 (7th Cir. 2019). Defendants argue that under *McDonald, Anderson–Burdick* does not apply to this equal protection challenge, dkt. 53 at 16–18, and as explained, the Court need not resolve this question at this stage of this case. Cf. *Mays v. LaRose,* 951 F.3d 775, 783 n.4 (6th Cir. 2020) ("It's unclear whether the Supreme Court ever intended *Anderson–Burdick* to apply to Equal Protection claims. That Court has only applied the framework in the context of generally applicable laws."). Under *Anderson–Burdick,* any burden on the right to vote would be analyzed under *McDonald*—which, as explained above, the Supreme Court has not limited to its facts or overruled—and *Griffin.* See *Tex. Democratic Party v. Abbott,* 961 F.3d 389, 393–94 (5th Cir. 2020) ("[*McDonald*] squarely governs the equal-protection issue.").

U.S. at 433. Instead, the rigor of the inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* at 434. Here, Plaintiffs have not alleged or shown that the State— through either Defendants' actions or Indiana's laws—has absolutely prohibited them from voting. *See McDonald*, 394 U.S. at 809 (because nothing showed that plaintiffs were "absolutely prohibited" from voting, Illinois' absentee voting decisions appeared "quite reasonable"). And as explained above, the privilege of voting by mail does not implicate the fundamental right to vote. *See id.* at 807. Plaintiffs therefore have not shown a substantial burden on the fundamental right to vote, leaving them with only their equal protection argument that Indiana does not evenhandedly grant a statutory entitlement to vote by mail. Dkt. 14 at 11–12.

But Plaintiffs have not shown a reasonable likelihood of success on that argument. To start, voting by mail is not a right but a privilege that "make[s] voting easier." *Luft v. Evers*, 963 F.3d 665, 672 (7th Cir. 2020). Nonetheless, under an equal protection analysis, the statutory distinctions must at least "bear some rational relationship to a legitimate state end." *McDonald*, 394 U.S. at 809. In this context, the legitimate state end is the "consistent and laudable state policy of adding . . . groups to the [vote by mail] coverage." *Id.* at 811. And Indiana is not required to all at once add every conceivable group who could benefit. *Id.*

For these reasons, "unavoidable inequalities in treatment, even if intended in the sense of being known to follow ineluctably from a deliberate

10

policy, do not violate equal protection." *Griffin*, 385 F.3d at 1132. That is the case here. Indiana drew distinctions about who may vote by mail, knowing that some would not be able to enjoy that privilege. *See* Ind. Code § 3-11-10-24. That legislative judgment is one that Indiana is generally entitled to make, *see Griffin*, 385 F.3d at 1131, and Plaintiffs have not shown a likelihood that it was merely an "arbitrary scheme," *McDonald*, 394 U.S. at 811. Moreover, "electoral provisions cannot be assessed in isolation," looking only at voting restrictions while ignoring voting privileges. *Luft*, 963 F.3d at 675.

Indiana provides several alternatives to voting in-person on November 3, 2020: (1) early in-person voting is available between October 6, 2020 and November 2, 2020; (2) voters who meet the requirements may vote by mail with an absentee ballot; and (3) eligible voters may have poll workers bring them a ballot so they may vote at home. *See How to Vote Early in Indiana*, https://www.in.gov/idr/voteearly.htm (last visited Aug. 20, 2020). These provisions of Indiana's voting laws make it easy to vote. The vote by mail absentee ballot provision, Indiana Code § 3-11-10-24(a), grants vote by mail privileges to any voter who falls into any one of thirteen categories, many of which are sweepingly broad. This "cut[s] in [Indiana's] favor." *Luft*, 963 F.3d at 675. A few less-convenient effects "does not an unconstitutional system make." *Id.*; *see McDonald*, 394 U.S. at 810.

The cases that Plaintiffs cite do not counsel otherwise. *Dunn v. Blumstein* was about whether citizens were entirely foreclosed from exercising their fundamental right to vote. 405 U.S. 330, 336 (1972). The same is true of

*Harper*, because it involved a poll tax which denied voters the right to vote altogether if they did not pay the tax. 383 U.S. at 666–68. Nor are any of the cited district court opinions on point, so Plaintiffs have not established a likelihood of success on the merits in light of *McDonald* and *Griffin*. *See, e.g. League of Women Voters of Va. v. Va. State Bd. of Elections*, --- F. Supp. 3d. ----, No. 6:20-cv-24 (W.D. Va. May 5, 2020) (addressing—in the consent decree context—an as-applied constitutional challenge to a witness-signature requirement for absentee ballots); *Doe v. Walker*, 746 F. Supp. 2d 667 (D. Md. 2010) (addressing a deadline for the receipt of absentee ballots from uniformed services and overseas voters).[4]

    Plaintiffs also attempt to distinguish *McDonald* and *Griffin* by arguing that nothing in those opinions suggests "that the Constitution would have no application to claims seeking to expand absentee voting in the face of a historic pandemic." Dkt. 62 at 15–16. While COVID-19 undisputedly presents new and serious challenges, Plaintiffs have not explained why those challenges trigger constitutional protections when the challenges of working mothers, medical personnel, and those working two jobs do not. *See Griffin*, 385 F.3d at 1130. In short, there have long been classes of people "for whom voting may be extremely difficult, if not practically impossible." *McDonald*, 394 U.S. at 809–10. Yet Plaintiffs do not identify any case in which that has been enough to

---

[4] Plaintiffs also cite *One Wisconsin Institute, Inc. v. Thomsen*, 198 F. Supp. 3d. 896 (W.D. Wisc. 2016), which has since been reversed in part and vacated in part on appeal, *Luft*, 963 F.3d 665.

show "unconstitutional incompleteness" of absentee voting privileges. *Id.* at 810.

Plaintiffs are therefore unlikely to be able to show that COVID-19's challenges entitle them to constitutional relief. When it comes to this virus, "[l]ocal officials are working tirelessly to 'shap[e] their response to changing facts on the ground,' knowing that the appropriate response is 'subject to reasonable disagreement.'" *Tex. Democratic Party*, 961 F.3d at 393–94 (quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Roberts, C.J., concurring in the denial of injunctive relief)). For the federal courts to step in and decide what measures are necessary would "allow[ ] a political question—whether a rule is beneficial, on balance—to be treated as a constitutional question and resolved by the courts rather than by legislators." *Luft*, 963 F.3d at 671. "*Burdick* forecloses that sort of substitution of judicial judgment for legislative judgment." *Id.*

Indeed, Indiana enjoys double deference in this case. First, the Constitution "confers on the states broad authority to regulate the conduct of elections, including federal ones." *Griffin*, 385 F.3d at 1130 (citing U.S. Const. Art. I § 4); *accord Burdick*, 504 U.S. at 433; *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 208 (2008) (Scalia, J., concurring). So courts do "not interfere unless strongly convinced that the legislative judgment is grossly awry." *Griffin*, 385 F.3d at 1131. Second, in a pandemic "[o]ur Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'"

13

*Pentecostal Church*, 140 S. Ct. at 1613 (Roberts, C.J., concurring in the denial of injunctive relief) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)).  Indiana receives this deference because of its responsibility to protect Plaintiffs and other voters on election day.  And indeed, for the general election Indiana is "procuring and distributing over 1 million face masks, over 1.5 million gloves, 20,000 half-gallon bottles of hand sanitizer, 5,000 gallons of surface and equipment disinfectant, and other PPE supplies for voters and poll workers."  Dkt. 53-4 at 3 ¶ 8.  Indiana also plans to distribute a manual on best safety practices, as well as posters and "social distancing markers."  *Id.* at 4 ¶ 9.

While balancing the harms and public interest is not required because Plaintiffs have not shown a reasonable likelihood of success, it is worth noting several factors that weigh in Defendants' favor.  It is in the interest of Defendants and the public that the manner of voting in the general election promote the accurate and timely counting and reporting of results.  *See Griffin*, 385 F.3d at 1131 (explaining some "problems created by absentee voting" and acknowledging that balancing those problems against the benefits "is quintessentially a legislative judgment").  Expanding voting by mail again for the general election may jeopardize that interest.  Dkt. 53 at 21–22.

Plaintiffs argue that Indiana should expand voting by mail for the general election as it did for the primary because it will enable more people to vote.[5]

---

[5] Plaintiffs do not present an argument that Indiana's vote by mail expansion for the primary election itself constitutionally requires the same for the general election.  *See* dkt. 14 at 15; dkt. 62 at 10.

14

But general elections already have substantially higher numbers of voters than primaries do. Combining that increase with increased votes from vote by mail privileges—even if that privilege is not expanded, and certainly if it is—could easily strain Indiana's voting systems because those systems are instead equipped for in-person voting. *Id.*; dkt. 53-1 at 2; dkt. 53-2 at 2; dkt. 53-4 at 4. There is therefore greater risk of delayed results and the disqualification of voters for late or defective ballots for the general election than for the primary. *See* dkt. 53-2 at 2; dkt. 53-3 at 4; dkt. 53-4 at 4–5. It is within Indiana's discretion to consider and weigh the benefits of expanded voting by mail with the harm that could result from the potential disqualification of a high number of absentee ballots and the inability of county election boards to certify election results in a timely manner.

In sum, Plaintiffs seek "unlimited absentee voting," for the November 3, 2020 general election, but have not shown a reasonable likelihood of overcoming "a host of serious objections to judicially legislating so radical a reform in the name of the Constitution." *Griffin,* 385 F.3d at 1130.

### 3. Plaintiffs are not likely to succeed on their Twenty-Sixth Amendment claim

Plaintiffs argue that, because voters who are at least sixty-five years old are entitled to vote by mail for that reason, Indiana's voting by mail statute abridges younger voters' right to vote on account of age in violation of the Twenty-Sixth Amendment. That amendment provides: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."

15

Dkt. 14 at 16 (quoting U.S. Const. amend. XXVI § 1). Defendants respond that Indiana's provisions do not abridge the right to vote, which does not include a right to vote absentee. Dkt. 52 at 18–19.

Plaintiffs have not shown a likelihood of success on this claim for the same reasons they have not shown a likelihood of success on their equal protection claim. The text of the Twenty-Sixth Amendment shows that it protects "the right . . . to vote." And as explained above, under *McDonald*, a restriction on absentee voting does not endanger the right to vote unless it "absolutely prohibit[s]" someone from voting. *McDonald*, 394 U.S. at 807.

Plaintiffs argue that *McDonald* "cannot possibly control the Twenty-Sixth Amendment analysis because the Twenty-Sixth Amendment had not been adopted when *McDonald* was decided." Dkt. 62 at 18. But the Twenty-Sixth Amendment and *McDonald* are contemporaries, and both address the constitutional right to vote. *See Tex. Democratic Party*, 961 F.3d at 409. So, as the Fifth Circuit recognized, "*McDonald*'s logic applies neatly to the Twenty-Sixth Amendment's text." *Id.* There is also "plenty" of historical evidence "that the Amendment's most immediate purpose was to lower the voting age from twenty-one to eighteen." *Id.* at 408 (citing Eric S. Fish, Note, *The Twenty-Sixth Amendment Enforcement Power*, 121 Yale L.J. 1168, 1170 (2012)).

Moreover, because there are very few cases involving the Twenty-Sixth Amendment, Plaintiffs are unable to show that it "clearly demand[s]" the "far-reaching power" of a preliminary injunction. *Orr v. Schicker*, 953 F.3d 490, 501 (7th Cir. 2020). At the least—focusing on the preliminary stage of this case—

16

Plaintiffs have not shown a reasonable likelihood of success on the merits of this claim, so they are not entitled to a preliminary injunction.[6]

\* \* \*

For these reasons, Plaintiffs have not met their threshold burden to show a reasonable likelihood of success on the merits for either their equal protection or Twenty-Sixth Amendment claim. See *Whitaker*, 858 F.3d at 1044. They therefore are not entitled to a preliminary injunction and the Court does not proceed to balance each parties' interests. See *id.*

### III.
### Conclusion

As the Supreme Court has noted, allowing broader voting by mail may be wise policy. See *McDonald*, 394 U.S. at 811 (noting Illinois' "consistent and laudable state policy of adding, over a 50-year period, groups to the absentee coverage"). Some states have chosen "no-excuse" voting by mail for all. See dkt. 62 at 14. Indiana has decided otherwise. The question here, however, is not whether the policy is wise, but whether it is constitutional. For the reasons explained above, Plaintiffs have not shown a reasonable likelihood of success in showing that the policy is unconstitutional.

Plaintiffs' motion for a preliminary injunction is therefore **DENIED**. Dkt. [13]. *Amicus* Disability Rights Education and Defense Fund's motion for leave

---

[6] Because Plaintiffs have not met their threshold preliminary injunction burden to show a reasonable likelihood of success on the merits, so addressing the remaining threshold factors is unnecessary. See *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013) ("Here, the analysis begins and ends with the likelihood of success on the merits.").

to file *amici curiae* brief is **GRANTED**.  Dkt. [64].[7]  The motion to certify class remains pending.  Dkt. 17.  The parties shall file a status update **by August 28, 2020**.

**SO ORDERED.**

Date: 8/21/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Courtney Lyn Abshire
INDIANA ATTORNEY GENERAL
courtney.abshire@atg.in.gov

Bridget A. Clarke
baclarke@comcast.net

Thomas M. Fisher
INDIANA ATTORNEY GENERAL
tom.fisher@atg.in.gov

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Jed W. Glickstein
MAYER BROWN LLP
jglickstein@mayerbrown.com

William R. Groth
MACEY SWANSON LLP
wgroth@fdgtlaborlaw.com

---

[7] The Court is grateful for the *amicus* brief and its valuable insights into COVID-19's impact on Hoosier voters with disabilities.  Dkt. 64-1.

Kian J. Hudson
INDIANA ATTORNEY GENERAL
kian.hudson@atg.in.gov

Gary A. Isaac
MAYER BROWN LLP
gisaac@mayerbrown.com

Brett E. Legner
MAYER BROWN LLP
blegner@mayerbrown.com

Parvinder Kaur Nijjar
INDIANA ATTORNEY GENERAL
parvinder.nijjar@atg.in.gov

Michael Anthony Scodro
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

Mark W. Sniderman
FINDLING PARK CONYERS WOODY & SNIDERMAN, PC
msniderman@findlingpark.com

Jeffrey M. Strauss
MAYER BROWN LLP
jstrauss@mayerbrown.com