# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, CHAQUITTA MCCLEARY, DAVID SLIVKA, DOMINIC TUMMINELLO, and INDIANA VOTE BY MAIL, INC., | ) ) ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| -vs- | ) | Case No. 1:20-cv-01271-JPH-DLP |
|  | ) |  |
| PAUL OKESON, KAREN CELESTINO-HORSEMAN, SUZANNAH WILSON OVERHOLT, and LITANY A. PYLE, in their official capacity as members of the Indiana Election Commission, and HOLLI SULLIVAN, in her official capacity as the Indiana Secretary of State, | ) ) ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Gary A. Isaac (*pro hac vice*)
Jeffrey M. Strauss (*pro hac vice*)
Brett E. Legner (*pro hac vice*)
Jed W. Glickstein (*pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
Email: gisaac@mayerbrown.com
Email: jstrauss@mayerbrown.com
Email: blegner@mayerbrown.com
Email: jglickstein@mayerbrown.com

*Of Counsel*

William R. Groth, Of Counsel
VLINK LAW FIRM LLC
429 N. Pennsylvania St., Suite 411
Indianapolis, IN 46204
(317) 353-9353
Email: WGroth@fdgtlaborlaw.com

Mark W. Sniderman
FINDLING PARK CONYERS WOODY
& SNIDERMAN, P.C.
151 N. Delaware Street, Ste. 1520
Indianapolis, IN 46204
(317) 231-1100 Tel
(317) 231-1106 Fax
Email: msniderman@findlingpark.com

Dated: December 10, 2021

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY................................................ 1

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.................................. 2

ARGUMENT .......................................................................................................... 3

I.      The Twenty-Sixth Amendment Does Not Merely Lower The Voting Age To 18. .......... 4

II.     Indiana's Absentee Voting Rules Affect The Twenty-Sixth Amendment's "Right To Vote."............................................................................................................... 6

        A.     Constitutional Text Shows That The Amendment Covers Absentee Voting. ..................................................................................................... 6

        B.     Legislative History Shows That The Amendment Covers Absentee Voting ........ 7

             1.     The Twenty-Sixth Amendment's legislative history shows that absentee voting is part of the "right to vote." ............................................. 7

             2.     The 1970 Amendments to the Voting Rights Act show that absentee voting is part of the "right to vote." ............................................. 8

             3.     The 1982 Amendments to the Voting Rights Act show that absentee voting is part of the "right to vote." ......................................... 10

        C.     *McDonald v. Board of Election Commissioners* Is Inapposite. .......................... 11

             1.     *McDonald* is not a Voting Amendments case.......................................... 11

             2.     *McDonald's* rationale supports Plaintiffs. ................................................ 12

             3.     The weight of authority rejects Defendants' interpretation. .................... 13

        D.     The Court Should Reconsider Its Preliminary Injunction Analysis..................... 14

III.    Indiana's Laws "Abridge" Younger Voters' Rights. ........................................................ 18

        A.     Younger Voters' Rights Are "Abridged" When It Is Harder For Them To Vote By Mail Compared To Older Voters........................................................ 18

        B.     The Fifth Circuit's Interpretation Of "Abridgment" Is Erroneous. .................... 19

CONCLUSION....................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. State Bd. of Elections*,
   393 U.S. 544 (1969)..................................................................................................8

*American Party of Texas v. White*,
   415 U.S. 767 (1974)............................................................................................12, 13

*Baker v. Carr*,
   369 U.S. 186 (1962)................................................................................................16

*Bostock v. Clayton Cnty.*,
   140 S. Ct. 1731 (2020)..........................................................................................4, 18

*Brnovich v. Democratic National Committee*,
   141 S. Ct. 2321 (2021) ..................................................................................... *passim*

*Brown v. Post*,
   279 F. Supp. 60 (W.D. La. 1968)...........................................................................10

*City of Mobile v. Bolden*,
   446 U.S. 55 (1980)...............................................................................................6, 10

*Colo. Project-Common Cause v. Anderson*,
   495 P.2d 220 (Colo. 1972)......................................................................................14

*Common Cause Ind. v. Lawson*,
   977 F.3d 663 (7th Cir. 2020) ..................................................................................14

*Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*,
   447 U.S. 530 (1980)..................................................................................................7

*Davis v. Guam*,
   932 F.3d 822 (9th Cir. 2019) ...............................................................................7, 17

*Fisher v. Hargett*,
   604 S.W.3d 381 (Tenn. 2020)..................................................................................14

*Georgia v. Ashcroft*,
   539 U.S. 461 (2003).................................................................................................20

*Harman v. Forssenius*,
   380 U.S. 528 (1965).........................................................................................6, 20, 21

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Jolicoeur v. Mihaly,*
   488 P.2d 1 (Cal. 1971) ....................................................................................14, 20

*Lane v. Wilson,*
   307 U.S. 268 (1939) ..........................................................................................6, 20

*Lassiter v. Northampton Cnty. Bd. of Elections,*
   360 U.S. 45 (1959) ................................................................................................12

*League of Women Voters of Fla., Inc. v. Lee,*
   2021 WL 4962099 (N.D. Fla. Oct. 8, 2021) ........................................................14

*Libertarian Party of Ill. v. Scholz,*
   872 F.3d 518 (7th Cir. 2017) ................................................................................3

*Lubin v. Panish,*
   415 U.S. 709 (1974) ..............................................................................................7

*Luft v. Evers,*
   963 F.3d 665 (7th Cir. 2020) ................................................................................19

*McDonald v. Bd. of Election Commr's of Chi.,*
   394 U.S. 802 (1969) ...................................................................................... *passim*

*Morissette v. United States,*
   342 U.S. 246 (1952) ..............................................................................................5

*Obama for America v. Husted,*
   697 F.3d 423 (6th Cir. 2012) ................................................................................13

*Ohio State Conference of NAACP v. Husted,*
   768 F.3d 524 (6th Cir. 2014) ................................................................................13

*Oregon v. Mitchell,*
   400 U.S. 112 (1970) ..........................................................................................4, 9

*Price v. N.Y. State Board of Elections,*
   540 F.3d 101 (2d Cir. 2008) .................................................................................13

*Purcell v. Gonzalez,*
   549 U.S. 1 (2006) .................................................................................................16

*Reno v. Bossier Parish School,*
   528 U.S. 320 (2000) ..................................................................................18, 19, 20

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Reynolds v. Sims*,
377 U.S. 533 (1964) ...................................................................................................... 7

*Rice v. Cayetano*,
528 U.S. 495 (2000) ............................................................................. 5, 11, 12, 17

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966) ...................................................................................................... 6

*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) ................................................................................ 16, 17

*Tex. Democratic Party v. Abbott*,
978 F.3d 168 (5th Cir. 2020) ................................................................................ 17, 19

*Thornburg v. Gingles*,
478 U.S. 30 (1986) ...................................................................................................... 10

*Tully v. Okeson*,
481 F. Supp. 3d 816 (S.D. Ind. 2020) ......................................................... *passim*

*Tully v. Okeson*,
977 F.3d 608 (7th Cir. 2020) ........................................................................ *passim*

*Tully v. Okeson*,
141 S. Ct. 2798 (2021) .................................................................................................. 2

*United States v. James Daniel Good Real Property*,
510 U.S. 43 (1993) ...................................................................................................... 12

*United States v. Mississippi*,
380 U.S. 128 (1965) ...................................................................................................... 6

*United States v. Texas*,
445 F. Supp. 1245 (S.D. Tex. 1978),
*aff'd, Symm v. United States*, 439 U.S. 1105 (1979) ...................................... 8

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) .................................................................................................... 15

*Walgren v. Bd. of Selectmen of Town of Amherst*,
519 F.2d 1364 (1st Cir. 1975) ................................................................................ 12

*Walgren v. Howes*,
482 F.2d 95 (1st Cir. 1973) ............................................................................ 12, 14

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Worden v. Mercer County Bd. of Elections,*
  294 A.2d 233 (N.J. 1972)......................................................................................7

**Constitutional Provisions and Federal Statutes**

U.S. Const. amend. XXVI ...............................................................................1, 3, 4

52 U.S.C. §10301(a) .................................................................................................10

Voting Rights Act of 1965, Pub. L. No. 89-110, 79 Stat. 437...............................8

Voting Rights Act Amendments of 1970, Pub. L. No. 91-285, 84 Stat. 314 ............4, 9

Voting Rights Act Amendments of 1982, Pub L. No. 97-205, 96 Stat. 131 ................11

**State Statutes**

Ind. Code § 3-5-2-16.5......................................................................................1, 21

Ind. Code § 3-11-8-2...............................................................................................1

Ind. Code § 3-11-10-1.............................................................................................1

Ind. Code § 3-11-10-24......................................................................................1, 21

Ind. Code § 3-11-10-26.3........................................................................................1

Ind. Code § 3-11-10-32...........................................................................................6

Ky. Rev. Stat. § 117.085(1)(a)(8) ..........................................................................2

La. Stat. § 18:1303(J)..............................................................................................2

Miss. Code Ann. § 23-15-715(b)............................................................................2

S.C. Code § 7- 15-320(B)(8).................................................................................2

Tenn. Code Ann. § 2-6-201(5)(A) ........................................................................2

Tex. Elec. Code § 82.003 .......................................................................................2

W.V. Code § 3-3- 1(b)(1)(B) .................................................................................2

**Legislative History**

116 Cong. Rec. 6013 (Mar. 4, 1970) .....................................................................9

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

116 Cong. Rec. 6990 (Mar. 11, 1970) ............................................... 9

117 Cong. Rec. 7532 (Mar. 23, 1971) ............................................. 6, 8

H.R. Rep. No. 97-227 (1981) ......................................................... 10

S. Rep. No. 92-26 (1971) ................................................................ 8

S. Rep. No. 97-417 (1982) ............................................................ 10

**Other Authorities**

Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747 (1999) ................................. 5

State Legislatures, *Voting Outside the Polling Place: Absentee, All-Mail and Other Voting at Home Options* (Sept. 24, 2020), https://bit.ly/3dh59ks ................................. 2

*Webster's New International Dictionary* (2d ed. 1959) ................................................. 18

## INTRODUCTION

Plaintiffs seek summary judgment on their claim that Indiana violates the United States Constitution by giving voters 65 years of age or older the right to vote absentee by mail without extending the same right to voters ages 18 to 64. On its face, this scheme disfavors younger voters on account of their age, and thus abridges the right to vote in violation of the Twenty-Sixth Amendment. *See* U.S. Const. amend. XXVI, § 1.

Plaintiffs previously moved for a preliminary injunction with respect to this claim, hoping to obtain relief before the 2020 general election. In denying that motion, this Court and the Seventh Circuit held that Plaintiffs were unlikely to show that Indiana's disparate treatment of younger voters violates the Twenty-Sixth Amendment. *Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020) ("*Tully II*"); *Tully v. Okeson*, 481 F. Supp. 3d 816 (S.D. Ind. 2020) ("*Tully I*"). However, these preliminary rulings are not binding and are contrary to applicable text, history, and precedent, including among other things the Supreme Court's decision in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021). Accordingly, as explained below, the Court should enter summary judgment in Plaintiffs' favor.

## BACKGROUND AND PROCEDURAL HISTORY

A registered voter in Indiana may vote in person on election day, typically in his or her precinct of residence, Ind. Code § 3-11-8-2, or in some cases at county vote centers, *id.* § 3-11-18.1. A registered voter may also vote absentee in the period ahead of the election. All absentee voters may return their absentee ballots in-person, either at the county clerk's office or, if approved, at a satellite voting site. Ind. Code §§ 3-11-10-1, -26, and -26.3. But only voters in certain categories are permitted to return their absentee ballots by mail. Ind. Code § 3-11-10-24(a). One of the categories of voters entitled to vote absentee by mail is "elderly voter[s]," Ind. Code § 3-11-10-24(a)(5), defined to mean voters who are at least 65 years of age. *Id*. § 3-5-2-16.5.

Only seven states besides Indiana offer older voters a special entitlement to vote absentee by mail. The remaining states (i) conduct all-mail elections or offer "no-excuse" mail-in voting to all voters (34 states and D.C.) or (ii) do not treat age as a valid "excuse" to vote by mail (8 states).[1]

Plaintiffs filed the operative complaint in this case on May 4, 2020, bringing claims under the Fourteenth and Twenty-Sixth Amendments and the Indiana Constitution. Dkt. 6. On June 8, 2020, Plaintiffs moved for a preliminary injunction on their federal claims. Dkt. 13. This Court denied the motion. 481 F. Supp. 3d 816. The Seventh Circuit affirmed the Court's order. 977 F.3d 608. The case was then stayed while Plaintiffs' certiorari petition was pending before the Supreme Court. Dkt. 97.

On June 21, 2021, the Supreme Court denied Plaintiffs' petition. *Tully v. Okeson*, 141 S. Ct. 2798 (2021). Plaintiffs subsequently dismissed their Fourteenth Amendment and state constitutional claims, Dkt. 101, and the Court lifted the stay. Dkt. 105. The parties then agreed to limited discovery and a briefing schedule for cross-motions for summary judgment. Dkt. 108.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiffs are Barbara Tully, Katharine Black, Marc Black, David Carter, Rebecca Gaines, Chaquitta McCreary, David Slivka, Dominic Tumminello, and Indiana Vote By Mail, Inc., a non-profit, non-partisan 501(c)(3) organization that advocates for measures that increase the availability of mail-in voting and safe and secure elections. The individual Plaintiffs are Indiana voters under 65 years of age; none currently qualifies, or expects to qualify, to vote absentee ballot by

---

[1] The other states with age-based "excuses" to vote absentee are: Kentucky, Ky. Rev. Stat. § 117.085(1)(h)(8); Louisiana, La. Stat. § 18:1303(J); Mississippi, Miss. Code Ann. § 23-15-715(b); South Carolina, S.C. Code § 7- 15-320(B)(8); Tennessee, Tenn. Code Ann. § 2-6-201(5)(A); Texas, Tex. Elec. Code § 82.003; and West Virginia, W.V. Code § 3-3- 1(b)(1)(B). *See generally* Nat'l Conf. of State Legislatures, *Voting Outside the Polling Place: Absentee, All-Mail and Other Voting at Home Options* tbl. 1– tbl. 3 (Sept. 24, 2020), https://bit.ly/3dh59ks.

mail in the upcoming election cycles under current Indiana law. Dkt. 112-1 – 112-8, ¶¶ 1, 3, 4. If given the opportunity, however, the individual Plaintiffs would prefer to vote by mail. *Id*., ¶¶ 2, 5.

Defendants are the four members of the Indiana Election Commission (Paul Okeson, Karen Celestino-Horseman, Suzannah Wilson Overholt, and Litany A. Pyle) and the Indiana Secretary of State (Holli Sullivan). Ms. Celestino-Horseman, Ms. Pyle, and Secretary Sullivan have been automatically substituted for prior officeholders. Fed. R. Civ. P. 25(d).[2]

## ARGUMENT

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Libertarian Party of Ill. v. Scholz*, 872 F.3d 518, 522 (7th Cir. 2017); Fed. R. Civ. P. 56(a). That is the case here because the only material questions that need to be resolved for Plaintiffs' remaining claim are purely legal.

The Twenty-Sixth Amendment, ratified in July 1971, provides that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. Const. amend XXVI, § 1. To determine whether Plaintiffs are entitled to summary judgment, the Court must decide (1) whether the Twenty-Sixth Amendment applies to age-based distinctions generally; (2) whether Indiana's age-based absentee voting rules affect the "right to vote," and (3) whether failing to provide younger voters with the same ability to vote absentee as older voters because of their age constitutes a "denial or abridgment" of that right. As shown below, the answer to all of those questions is "Yes."

---

[2] Governor Eric Holcomb appointed Secretary Sullivan following then-Secretary Connie Lawson's February 2021 announcement that she planned to resign her position once a successor was ready to serve. *See* Press Release, *Gov. Holcomb Announces Sullivan as Secretary of State* (Mar. 16, 2021), https://events.in.gov/event/gov_holcomb_announces_sullivan_as_secretary_of_state. Ms. Celestino-Horseman and Ms. Pyle were appointed to the Indiana Election Commission in July 2021 and October 2021, respectively, to replace S. Anthony Long and Zachary E. Klutz. *See* Ind. Election Comm'n, https://www.in.gov/sos/elections/election-commission.

Accordingly, Indiana's disparate treatment of older and younger voters violates the Twenty-Sixth Amendment as a matter of law.

## I.      The Twenty-Sixth Amendment Does Not Merely Lower The Voting Age To 18.

Defendants have argued that based on the circumstances of its passage in 1971, the Twenty-Sixth Amendment simply "secur[es] the right to vote for all citizens age 18 and older" and does not "go further and bar *all* aged-based distinctions in voting laws." *Tully II*, No. 20-2605 (7th Cir.), Dkt. 33 at 14-18. That argument is unavailing.

It is true, as this Court has observed, that "the Amendment's most immediate purpose was to lower the voting age from twenty-one to eighteen." *Tully I*, 481 F. Supp. 3d at 825. But as the Supreme Court recently explained, courts cannot disregard an antidiscrimination law's plain meaning just because its application in a given case "reaches 'beyond the principal evil' legislators may have intended or expected to address." *Bostock v. Clayton Cnty.,* 140 S. Ct. 1731, 1749 (2020).

Congress passed the Twenty-Sixth Amendment following the Supreme Court's decision in *Oregon v. Mitchell* striking down Title III of the Voting Rights Act Amendments of 1970, which sought to lower the voting age to 18 in state and local elections. 400 U.S. 112, 118 (1970). Rather than prohibit only the "denial" of the right to vote based on age, as Congress had attempted to do in Title III of the 1970 Amendments, the Twenty-Sixth Amendment prohibits both the denial *and* the abridgment of the right to vote. This demonstrates that the Twenty-Sixth Amendment is broader than the 1970 Amendments to the Voting Rights Act, and that states can violate the Twenty-Sixth Amendment if their voting laws burden younger voters' rights even if those voters are still able to cast a ballot in other ways.[3]

---

[3] *Compare* Voting Rights Act Amendments of 1970, Pub. L. No. 91-285, § 302, 84 Stat. 314, 318 ("Except as required by the Constitution, no citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any primary or in any election shall be denied the right to vote in any such primary or election on account of age if such citizen is eighteen years of age or older.") *with* U.S. Const.,

Construing the Twenty-Sixth Amendment to merely guarantee that citizens age 18 or older shall have the right to vote also ignores the Amendment's textual and historical context. In prohibiting both the denial *and* the abridgment of the right to vote, the Twenty-Sixth Amendment consciously echoes three of the Constitution's earlier Amendments, which similarly provide that no state shall "den[y]" or "abridge[]" the right of citizens to vote on account of certain criteria: race, color, or previous servitude (Fifteenth); sex (Nineteenth); or ability to pay a poll tax (Twenty-Fourth). This brief refers to all four of these Amendments as the "Voting Amendments."

Discussing the Fifteenth Amendment, the Supreme Court has explained that the language used in the Voting Amendments is "cast in fundamental terms" and "transcend[s] the particular controversy which was the immediate impetus for its enactment." *Rice v. Cayetano,* 528 U.S. 495, 512 (2000). The Twenty-Sixth Amendment's use of identical language to address identical subject matter indicates that it and the other Voting Amendments should be interpreted similarly. "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952); *see also* Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747, 789 (1999).

Even though the text of the Twenty-Sixth Amendment is dispositive, it bears mention that proponents of the Amendment emphasized the parallels between the Twenty-Sixth Amendment and the Constitution's other Voting Amendments in floor debates preceding the Amendment's passage. For example, Representative Celler, the Twenty-Sixth Amendment's primary advocate in the House of Representatives, stated that the proposed amendment "is modeled after similar

---

Amend. XXVI, § 1 ("The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.").

provisions in the 15th amendment, which outlawed racial discrimination at the polls, and the 19th amendment, which enfranchised women." 117 Cong. Rec. 7532-7533 (Mar. 23, 1971). Representative Pepper agreed, declaring that "[w]hat we propose to do . . . is exactly what we did" in "the 15th amendment and . . . the 19th amendment." *Id*. at 7539. And Representative Poff explained that "[j]ust as the 15th amendment prohibits racial discrimination in voting and just as the 19th amendment prohibits sex discrimination in voting, the proposed amendment would prohibit age discrimination in voting." *Id*. at 7534. "In this regard," he continued, "the proposed amendment would protect not only an 18-year old, but also the 88-year old." *Id*.

## II.   Indiana's Absentee Voting Rules Affect The Twenty-Sixth Amendment's "Right To Vote."

Indiana's absentee voting rules affect the "right to vote" within the meaning of the Twenty-Sixth Amendment and the other Voting Amendments.

### A.   Constitutional Text Shows That The Amendment Covers Absentee Voting.

The Twenty-Sixth Amendment speaks in "plain, unambiguous language." *United States v. Mississippi,* 380 U.S. 128, 140 (1965). Like the other Voting Amendments, it "secure[s] freedom from discrimination" in all "matters affecting the franchise." *Lane v. Wilson*, 307 U.S. 268, 274 (1939); *see also City of Mobile v. Bolden*, 446 U.S. 55, 61 (1980) (explaining that the Fifteenth Amendment "forbids" racial discrimination "in matters having to do with voting"); *South Carolina v. Katzenbach*, 383 U.S. 301, 325 (1966) (the Fifteenth Amendment "invalidate[s] state voting qualifications or procedures which are discriminatory on their face"); *Harman v. Forssenius*, 380 U.S. 528, 540-541 (1965) (stating that the Voting Amendments "'nullif[y] sophisticated as well as simple-minded modes' of impairing the right guaranteed").

An individual who casts an absentee ballot is engaged in "voting" under the ordinary understanding of that term. *Cf.* Ind. Code § 3-11-10-32 (noting that a voter who "has marked and

returned an absentee ballot" "may not vote in person at a precinct"). Indeed, the Supreme Court has described laws governing absentee voting as "time, place, or manner voting rules." *Brnovich*, at 2333. In the First Amendment context, time, place or manner rules governing speech do not fall outside the scope of constitutional protection merely because there may be alternative channels for expression. *E.g.*, *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 536-37 (1980). Time, place or manner voting rules should be treated similarly.

Treating the "right to vote" as excluding absentee voting also is inconsistent with the principle that "history has seen a continuing expansion of the scope of the right of suffrage." *Reynolds v. Sims*, 377 U.S. 533, 555 & n.28 (1964). Like the other Voting Amendments, the Twenty-Sixth Amendment reflects "an increasing pressure for broader access to the ballot." *Lubin v. Panish*, 415 U.S. 709, 713 (1974). It "clearly evidences the purpose not only of extending the voting right to younger voters but also of encouraging their participation by the elimination of all unnecessary burdens and barriers." *Worden v. Mercer County Bd. of Elections*, 294 A.2d 233, 237 (N.J. 1972). There accordingly are no grounds for a narrow construction of the Amendment's terms. To the contrary, given the history and purpose of the Voting Amendments, "where there is any doubt" about an Amendment's boundary courts should "err on the side of inclusiveness." *Davis v. Guam*, 932 F.3d 822, 830 (9th Cir. 2019).

### B.  Legislative History Shows That The Amendment Covers Absentee Voting.

The legislative history of the Twenty-Sixth Amendment reinforces the conclusion that laws governing absentee voting are part of the "right to vote."

#### 1.  The Twenty-Sixth Amendment's legislative history shows that absentee voting is part of the "right to vote."

When Representative Celler introduced the Twenty-Sixth Amendment in the House of Representatives, he stated that Section 1 of the proposed Amendment "contemplates that the term

'vote' includes all action necessary to make a vote effective . . . including, but not limited to, registration or other action required by law prerequisite to voting [or] casting a ballot." 117 Cong. Rec. 7533 (Mar. 23, 1971). That is the same definition Congress used in the Voting Rights Act of 1965, Pub. L. No. 89-110, § 14(c)(1), 79 Stat. 437, 445, which the Supreme Court found "[i]ndicative of an intention to give the Act the *broadest possible* scope." *Allen v. State Bd. of Elections*, 393 U.S. 544, 566-567 (1969) (emphasis added).

The Senate Report that accompanied the Twenty-Sixth Amendment reinforces this conclusion. It recognized that the Twenty-Sixth Amendment would not merely protect the ability to cast a ballot, but also ensure that younger voters could participate in the electoral process on the same terms as other voters. As the Report explained, "forcing young voters to undertake special burdens—obtaining absentee ballots, or traveling to one centralized location in each city, for example—in order to exercise their right to vote might well serve to dissuade them from participating in the election." S. Rep. No. 92-26 (1971), reprinted at 1971 U.S.C.C.A.N. 931, 943. The Report also stated that "to force younger voters to go to greater pains in order to exercise their right to vote" than older voters "is at least inconsistent with the purpose of the Voting Rights Act, which sought to encourage greater political participation on the part of the young." *Id*. at 944; *see also United States v. Texas*, 445 F. Supp. 1245, 1247 (S.D. Tex. 1978), *aff'd, Symm v. United States*, 439 U.S. 1105 (1979).

### 2.    The 1970 Amendments to the Voting Rights Act show that absentee voting is part of the "right to vote."

The contemporaneous 1970 Amendments to the Voting Rights Act provide still more evidence that absentee voting does not fall outside the protections of the Twenty-Sixth Amendment. In addition to attempting to lower the voting age in national, state, and local elections, the 1970 Amendments sought to create "uniform national rules for absentee voting in presidential and vice-

presidential elections." *Mitchell*, 400 U.S. at 134 (Black, J.). Congress expressly recognized that "the lack of sufficient opportunities for absentee registration and absentee balloting in presidential elections . . . denies or abridges the inherent constitutional right of citizens to vote for their President and Vice President." Voting Rights Act Amendments of 1970, Pub. L. No. 91-285, § 202(a)(1), 84 Stat. 314, 316.

Legislative history underscores this statutory finding. Senator Barry Goldwater, who sponsored the absentee balloting provisions of the Voting Rights Act Amendments in the Senate, explicitly linked his absentee voting proposal with the goal of lowering the voting age, explaining that one "important facet" of his proposal was that "once the voting age is reduced to 18, the benefits [of absentee voting] will be immediately available to all our young Americans who are attending college away from their homes." 116 Cong. Rec. 6990 (Mar. 11, 1970). Another Senator praised the absentee voting provision's "fundamental purpose" of "strip[ping] conditions to full participation in the electoral process" to achieve "the guarantee of the 15th Amendment to the Constitution that the right to vote shall not be denied on account of race or color." 116 Cong. Rec. 6013 (Mar. 4, 1970) (statement of Sen. Baker).

There is no indication that when Congress passed the Twenty-Sixth Amendment in the wake of *Mitchell*, it intended to sever the link between voting and absentee voting that it had recognized just one year earlier in the 1970 Amendments to the Voting Rights Act. Although in *Mitchell* the Supreme Court invalidated the 1970 Act's voting age provisions in part, the Court separately upheld the 1970 Act's absentee voting provisions as a constitutional exercise of Congress's authority "to insure a fully effective voice to all citizens in national elections." *Mitchell*, 400 U.S. at 134 (Black, J.); *see also id*. at 236-237 (Brennan, J., concurring in part). In passing the Twenty-Sixth Amendment, therefore, Congress had no reason to doubt that courts would interpret

Amendment expansively, to include all aspects of voting necessary to assure full and equal partic-

ipation in the electoral process, including absentee voting.

### 3. The 1982 Amendments to the Voting Rights Act show that absentee voting is part of the "right to vote."

The Voting Rights Act Amendments of 1982 provide further confirmation the Constitu-

tion's Voting Amendments apply to absentee voting. The 1982 Amendments modified § 2 of the

Voting Rights Act, which implemented the Fifteenth Amendment's prohibition on the denial or

abridgment of the right to vote on account of race. The Senate Report accompanying the

1982 Amendments explained that the Senate viewed § 2 as prohibiting all practices that "result in

the denial of equal access to *any phase* of the electoral process for minority group members." S.

Rep. No. 97-417 at 30 (1982) (emphasis added). This included absentee voting in particular. The

Senate Report identified a 1968 court decision, *Brown v. Post*, 279 F. Supp. 60, 63-64 (W.D. La.

1968), which found a § 2 violation where parish clerks failed to make absentee ballots available to

black voters on the same terms as white voters. S. Rep. No. 97-417 at 30 n.119. The House Report

similarly recognized that § 2 covered absentee voting rules. *See* H.R. Rep. No. 97-227 at 31 n.105

(1981) ("a violation would be proved by showing that election officials made absentee ballots

available to white citizens without a corresponding opportunity being given to minority citizens

similarly situated").

As amended in 1982, § 2 of the Voting Rights Act goes beyond the Fifteenth Amendment,

because it provides that facially neutral laws—even if enacted without a discriminatory purpose—

may constitute denial or abridgement of the right to vote. 52 U.S.C. §10301(a); *Thornburg v. Gin-

gles*, 478 U.S. 30, 44 n.8 (1986). Congress enacted this provision in light of the Supreme Court's

1980 decision in *City of Mobile*, which interpreted both § 2 and the Fifteenth Amendment to in-

clude an intent requirement. Nevertheless, although the 1982 Amendments adjusted the statutory

test used to determine if a law denied or abridged the "right to vote," it left the definition of "voting" unchanged. *See* Voting Rights Act Amendments of 1982, Pub L. No. 97-205, 96 Stat. 131. As noted above, this was the same definition embraced by the proponents of the Twenty-Sixth Amendment. Accordingly, that both the 1982 Senate and House Reports assume that discrimination with respect to absentee voting can violate § 2 is powerful evidence that the "right to vote" in the Constitution's Voting Amendments encompasses absentee voting as well.

## C. *McDonald v. Board of Election Commissioners* Is Inapposite.

Defendants have argued that *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), categorically holds that laws concerning absentee voting do not implicate the "right to vote." That is not a tenable conclusion for three reasons.

### 1. *McDonald* is not a Voting Amendments case.

*McDonald* addresses the meaning of the "right to vote" solely for purposes of the Fourteenth Amendment's equal protection clause, which does not mention voting specifically. 394 U.S. at 806. The opinion does not mention any of the Constitution's Voting Amendments, let alone suggest that it is defining the "right to vote" for all purposes.

Nor is there any hint in the legislative history that Congress intended to adopt *McDonald*'s understanding of the "right to vote" when it passed the Twenty-Sixth Amendment. Rather, the Twenty-Sixth Amendment was explicitly modeled on the Constitution's other Voting Amendments and the Voting Rights Act, whose definition of "voting"—before and after *McDonald*—was significantly broader than *McDonald*'s Fourteenth Amendment interpretation.

Interpreting *McDonald*'s discussion of the Fourteenth Amendment to cabin the reach of the Twenty-Sixth Amendment's specific protections is not only ahistorical, but also ignores that the Constitution's Amendments have "independent meaning and force." *Rice,* 528 U.S. at 522. The Supreme Court has rejected the view that the applicability of one constitutional amendment

preempts the guarantees of another." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993). In particular, the Supreme Court has explicitly rejected the proposition that compliance with the Fourteenth Amendment "somehow excuses compliance" with the Fifteenth Amendment's "race neutrality command." *Rice*, 528 U.S. at 522; *see also Lassiter v. Northampton Cnty. Bd. of Elections*, 360 U.S. 45, 53 (1959) (voting distinctions that comply with the Fourteenth Amendment can nonetheless be unconstitutional if they "perpetuate that discrimination which the Fifteenth Amendment was designed to uproot"). The same is true of the Twenty-Sixth Amendment. As the First Circuit has explained, it is "difficult to believe" that the Twenty-Sixth Amendment "contributes no added protection to that already offered by the Fourteenth Amendment." *Walgren v. Bd. of Selectmen of Town of Amherst*, 519 F.2d 1364, 1367 (1st Cir. 1975).

### 2.   *McDonald's* rationale supports Plaintiffs.

Even if *McDonald*'s discussion of the right to vote applies to a Twenty-Sixth Amendment claim—it does not—the decision's underlying rationale cuts against Defendants. In *McDonald*, the Supreme Court acknowledged that absentee-ballot rules drawn on the basis of "suspect" classifications would "demand a more exacting judicial scrutiny." 394 U.S. at 807. The Court declined to apply exacting scrutiny in *McDonald* because "the distinctions made by Illinois' absentee provisions [were] not drawn on the basis" of traditionally suspect classifications. *Id*. As the First Circuit recognized soon after the Twenty-Sixth Amendment's passage, however, the Voting Amendments "would seem to have made the specially protected groups, at least for voting-related purposes, akin to a 'suspect class.'" *Walgren v. Howes*, 482 F.2d 95, 102 (1st Cir. 1973).

In *American Party of Texas v. White*, 415 U.S. 767 (1974), moreover, the Supreme Court cited *McDonald* before explaining that "it is plain that permitting absentee voting by some classes of voters and denying the privilege to other classes of otherwise qualified voters in similar circumstances, without affording a comparable alternative means to vote, is an arbitrary discrimination

violative of the Equal Protection Clause." *Id*. at 795. Given that holding, which limits *McDonald*'s applicability even in its original Fourteenth Amendment context, it makes no sense to read *McDonald* as categorically removing absentee voting from the Twenty-Sixth Amendment's protections.

### 3.   The weight of authority rejects Defendants' interpretation.

The conclusion that *McDonald* places absentee voting provisions outside the reach of the Twenty-Sixth Amendment cannot be squared with the holdings of many other federal courts, which have squarely rejected such arguments in the Fourteenth Amendment context. If *McDonald* does not impose such a rule for Fourteenth Amendment claims, it follows *a fortiori* that it does not impose such a rule in the Twenty-Sixth Amendment context as well.

In *Obama for America v. Husted*, for example, the plaintiffs challenged an Ohio provision precluding some voters from casting in-person early ballots in the November 2012 election. 697 F.3d 423 (6th Cir. 2012). The Sixth Circuit held that, under the Fourteenth Amendment, "Plaintiffs [do] not need to show that they were legally prohibited from voting" in other ways to trigger heightened scrutiny. *Id*. at 430-431. As that court later explained, "We did not read *McDonald* to require proof that there was no possibility that the plaintiffs would find a way to adjust and vote through the remaining options." *Ohio State Conference of NAACP v. Husted*, 768 F.3d 524, 541 (6th Cir. 2014), *vacated on other grounds*, 2014 WL 10384647 (6th Cir. Oct. 2, 2014).

Likewise, in *Price v. N.Y. State Board of Elections*, voters challenged a New York law prohibiting the use of absentee ballots in elections for political party county committees. 540 F.3d 101 (2d Cir. 2008). The district court concluded that, under *McDonald*, "restrictions on access to absentee ballots do not severely burden the right to vote, so long as the class of voters to whom absentee ballots are denied are not thereby deprived of their only method of voting." *Id*. at 106. But the Second Circuit held that such a showing was unnecessary. In concluding that the plaintiffs were entitled to summary judgment on their Fourteenth Amendment claim, it was sufficient that

"there [was] at least some burden on the voter-plaintiffs' rights" that made it "difficult to vote in person." *Id*. at 109 & n.9; *see also Walgren*, 482 F.2d at 99 n.9 (rejecting the argument that students could not bring Fourteenth Amendment claim because "absentee ballots are made available to voters as a privilege"); *League of Women Voters of Fla., Inc. v. Lee*, 2021 WL 4962099, at *13-15 (N.D. Fla. Oct. 8, 2021) (concluding that the argument that *McDonald* means that restrictions on mail-in voting "do[] not implicate the right to vote" is "unsound").

State supreme courts are in accord. The California Supreme Court has held that the Twenty-Sixth Amendment invalidates voting restrictions if "[t]he burden placed on youth would be different than that placed on other absentee voters." *Jolicoeur v. Mihaly*, 488 P.2d 1,4 (Cal. 1971). That is so even if voters may "travel to their parents' district to register and vote" or "register and vote as absentees." *Id*. The Colorado Supreme Court has stated that "the prohibition against denying the right to vote to anyone eighteen years or older by reason of age applies to the *entire process* involving the exercise of the ballot and its concomitants." *Colo. Project-Common Cause v. Anderson*, 495 P.2d 220, 223 (Colo. 1972) (en banc). And the Tennessee Supreme Court has rejected the "misplaced" argument that *McDonald* short-circuits constitutional challenges to absentee voting restrictions, explaining that "[c]haracterizing absentee voting by mail as a 'privilege' begs the question of whether, under some circumstances, limitations on this lawful method of voting can amount to a burden on the right to vote itself. The answer to that question must be yes." *Fisher v. Hargett*, 604 S.W.3d 381, 401 (Tenn. 2020).

### D.   The Court Should Reconsider Its Preliminary Injunction Analysis.

Plaintiffs acknowledge that in their previous rulings denying the motion for a preliminary injunction, both this Court and the Seventh Circuit concluded that *McDonald* likely foreclosed Plaintiffs' Twenty-Sixth Amendment challenge. *Tully II*, 977 F.3d at 611; *Tully I*, 481 F. Supp. 3d at 825; *see also Common Cause Ind. v. Lawson*, 977 F.3d 663, 664 (7th Cir. 2020) (reversing a

14

preliminary injunction and citing *Tully II* for the proposition that "as long as the state allows voting in person, there is no constitutional right to vote by mail").

As this Court recognized, however, conclusions reached during the preliminary injunction phase are necessarily "focus[ed] on the preliminary stage" of the proceedings. *Tully I*, 481 F. Supp. 3d at 825; *see also Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"). Defendants have conceded that "unlike final judgments, preliminary-injunction decisions have no preclusive effect on future proceedings in a single case." Br. in Opp. 22 n.5, *Tully v. Okeson*, No. 20-1244, 2021 WL 2109134 (U.S. May 21, 2021).

In addition to the arguments in Part II.A & C *supra*, there are four reasons why this Court should not follow the interpretation of *McDonald* it adopted at the preliminary injunction stage.

***First***, the Supreme Court's subsequent decision in *Brnovich* significantly undermines the rationale of both *Tully I* and *Tully II*. In *Brnovich*, the Supreme Court addressed a § 2 Voting Rights Act challenge to two Arizona voting laws, including one that limited the persons who could collect ballots "[f]or those who choose to vote early by mail." 141 S. Ct. at 2334. Despite taking a "fresh look at the statutory text" of § 2, *id*. at 2337, no member of the Supreme Court suggested that Arizona's absentee voting laws were exempt from scrutiny because Arizonans could vote in person, or because the "right to vote" did not include the right to vote absentee. In fact, the majority in *Brnovich* cited the 1982 Senate Report's conclusion that "discriminat[ion] with respect to absentee voting" was actionable under § 2. *Id*. at 2333 & n.4 (citing *Brown*, 279 F. Supp. at 63); *see also* Part II.B.3 *supra* (discussing the 1982 Report). That *Brnovich* neither cited *McDonald* nor drew a distinction based on absentee voting makes it highly doubtful that *McDonald* "t[ells] us that the

15

fundamental right to vote does not extend to a claimed right to cast an absentee ballot by mail." *Tully II*, 977 F.3d at 611.

**Second**, in concluding that Plaintiffs were unlikely to succeed on their Twenty-Sixth Amendment claim, neither this Court nor the Seventh Circuit considered the historical evidence in Part II.B *supra*. This evidence overwhelmingly shows that the Constitution's other Voting Amendments and the Voting Rights Act—not the *McDonald* decision—are the appropriate sources to understand the scope of the Twenty-Sixth Amendment's "right to vote."

**Third**, the Seventh Circuit emphasized that federal courts should "exercise caution and restraint" when considering preliminary injunction motions directed at state election regulations "on the eve of an election." *Tully II*, 977 F.3d at 611-612 (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). That principle does not apply here. *See Purcell*, 549 U.S. at 5 ("We underscore that we express no opinion here on the correct disposition, after full briefing and argument, . . . on the ultimate resolution of these cases."). At summary judgment, the Court needs only to decide whether there are no genuine issues of fact such that Plaintiffs are entitled to judgment as a matter of law. Once the Court determines the constitutionality of Indiana's absentee voting statute, it can address the appropriate remedy for the violation in subsequent proceedings. *Cf. Baker v. Carr*, 369 U.S. 186, 198 (1962) ("Beyond noting that we have no cause at this stage to doubt the District Court will be able to fashion relief if violations of constitutional rights are found, it is improper now to consider what remedy would be most appropriate if appellants prevail at the trial.").

**Finally**, when the Court decided the preliminary injunction motion in this case last summer, the Fifth Circuit had just stayed an injunction pending appeal in a similar case in Texas on the grounds that *McDonald*'s "logic" precluded Twenty-Sixth Amendment claims based on mail-in voting. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 406 (5th Cir. 2020) ("*TDP I*"). This

Court cited *TDP I* as support for denying Plaintiffs' motion in this case. *See Tully I*, 481 F. Supp. 3d at 825.

The *TDP I* opinion's reading of *McDonald* was doubtful from the start, as only one panel member in *TDP I* (Judge Smith) ultimately relied on *McDonald* as the basis for the stay. A second questioned *McDonald*'s applicability, noting that "[t]he text of the Fifteenth Amendment closely tracks the text of the Twenty-Sixth Amendment" and that "it would presumably run afoul of the Constitution to allow only voters of a particular race to vote by mail." *TDP I*, 961 F.3d at 416-417 (Ho, J., concurring). A third argued for *Pullman* abstention and would not have reached the merits at all. *Id*. at 419 (Costa, J., concurring). Following this Court's preliminary injunction decision, moreover, the Fifth Circuit formally abrogated *TDP I*'s analysis of *McDonald*, declaring in its merits opinion "that the holdings in the motions panel opinion as to *McDonald* are not precedent." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 194 (5th Cir. 2020) ("*TDP II*"); *see also id*. at 199 (Stewart, J., concurring in part and dissenting in part) (stating that "the options granted to voters to cast their vote are part of 'the right to vote' under the Twenty-Sixth Amendment").

The Seventh Circuit did not cite *TDP I*'s Twenty-Sixth Amendment analysis in resolving the preliminary injunction appeal in this case. The court did cite the merits decision in *TDP II*, ostensibly in support of its reading of *McDonald*. 977 F.3d at 613. However, the majority failed to recognize that *TDP II* reached the *opposite* conclusion about the meaning of the "right to vote," and a third member of the panel in *Tully II* wrote separately to reject the majority's "rigid" inter-pretation of the *McDonald* decision. *Tully II*, 977 F.3d at 619 (Ripple, J., concurring).[4]

---

[4] Judge Ripple would have found no Twenty-Sixth Amendment violation on the grounds that the "values" of the Twenty-Sixth Amendment were not "directly implicated" by Indiana's laws. 977 F.3d at 619. But the Voting Amendments "prohibit[] *all provisions* denying or abridging the voting franchise of any citizen or class of citizens" based on the impermissible criteria. *Rice*, 528 U.S. at 512 (emphasis added); *see also Davis*, 932 F.3d at 843 ("established Fifteenth Amendment principles . . . single out voting restrictions based on race as impermissible whatever their justification").

All of this confusion underscores why the Seventh Circuit's preliminary injunction ruling should not control here. Notwithstanding its earlier preliminary conclusion that Plaintiffs were unlikely to succeed on their Twenty-Sixth Amendment claim, this Court can and should take a fresh look at the meaning and scope of the Twenty-Sixth Amendment. The law and history discussed above confirms that mail-in voting falls within the "right to vote" protected by the Voting Amendments.

## III.   Indiana's Laws "Abridge" Younger Voters' Rights.

It is beyond dispute that Indiana's absentee voting laws treat voters differently "on account of age." *See Bostock*, 140 S. Ct. at 1739 ("on account of" encompasses the "simple" standard of "but-for causation"); *Webster's New International Dictionary* (2d ed. 1959) (defining "on account of" as "[f]or the sake of; by reason of; because of"). The question is whether this facially disparate treatment constitutes an "abridgment" of the right to vote. As shown below, it does.

### A.   Younger Voters' Rights Are "Abridged" When It Is Harder For Them To Vote By Mail Compared To Older Voters.

The concept of "abridgment" "necessarily entails a comparison." *Reno v. Bossier Parish School*, 528 U.S. 320, 333-34 (2000). Compared to the right to vote that Indiana provides to older citizens, the right it provides to younger voters is less robust. Voters under 65 years need a specific excuse to vote by mail, while voters 65 years and older do not. Therefore, the rights of younger voters are "abridged" on account of age.

Importantly, for purposes of determining whether there has been an "abridgment," it does not matter that younger voters may be able to cast a ballot in other ways. In *Brnovich*, all nine justices agreed that an "abridgment" could occur even where the right to vote was not completely denied. *See* 141 S. Ct. at 2341 ("nobody disputes . . . that an 'abridgment' of the right to vote under

18

§ 2 does not require outright denial of the right"); *id*. at 2357 (Kagan, J., dissenting) ("'abridg-ment' . . . means to 'curtail,' rather than take away, the voting right"). Abridgment "necessarily means something more subtle and less drastic than the complete denial of the right to cast a ballot." *Bossier Parish*, 528 U.S. at 359 (Souter, J., concurring in part).

### B.    The Fifth Circuit's Interpretation Of "Abridgment" Is Erroneous.

In *TDP II*, the Fifth Circuit concluded that "an election law abridges a person's right to vote for the purposes of the Twenty-Sixth Amendment only if it makes voting more difficult for that person than it was before the law was enacted or enforced." 978 F.3d at 190-191. Similarly, Defendants have argued that giving older voters the right to vote by mail does not "abridge" the rights of younger voters because younger voters are able to cast a ballot in other ways. *Tully II*, No. 20-2605 (7th Cir.), Dkt. 33 at 23. This Court did not endorse a retrogression interpretation of the Twenty-Sixth Amendment in denying the motion for a preliminary injunction. The Seventh Circuit cited *TDP II*'s retrogression interpretation in passing, 977 F.3d at 614, but did not opine on that question that question, focusing instead on the supposed meaning of the "right to vote."

Interpreting "abridgment" to mean retrogression of the disfavored group is inconsistent with binding Supreme Court authority. The Fifteenth Amendment's prohibition on the "denial" or "abridgment" of the right to vote has "never been read to refer only to retrogression." *Bossier Parish*, 528 U.S. at 333. Rather, this provision, and the corresponding provision in § 2 of the Vot-ing Rights Act, focus on "discrimination more generally." *Bossier Parish*, 528 U.S. at 334; *see also Luft v. Evers*, 963 F.3d 665, 672 (7th Cir. 2020) (calling § 2 "an equal-treatment requirement" and citing *Bossier Parish*); *TDP II*, 978 F.3d at 197 (Stewart, J., dissenting) (similar).

Put another way, even if a law that makes it easier for voters of a certain race to vote absentee would not necessarily violate the retrogression standard in § 5 of the Voting Rights Act,

*Georgia v. Ashcroft*, 539 U.S. 461, 466 (2003), such a law plainly would violate § 2 and the Fifteenth Amendment, which are concerned with "what the right to vote *ought to be*." *Bossier Parish*, 528 U.S. at 334 (emphasis in original). By the same token, even if Indiana's absentee voting laws do not make it harder for younger voters to cast a ballot than before, those laws do violate the Twenty-Sixth Amendment, which requires states to "treat all citizens 18 years of age or older alike for all purposes related to voting." *Jolicoeur*, 488 P.2d at 12.

A retrogression interpretation of "abridgment" in the Twenty-Sixth Amendment also cannot be reconciled with earlier Voting Amendment precedents. In *Lane*, for example, the Supreme Court considered a registration system enacted after the Court invalidated an Oklahoma literacy test that effectively denied black citizens the right to vote. Voters who cast ballots in the 1914 general election "automatically remained qualified voters" while new voters had to register during a two-week window. 307 U.S. at 271. This scheme did not make it "more difficult" for black citizens to vote; Oklahoma's literacy requirements previously prevented many black citizens from voting altogether. Nevertheless, the Supreme Court held that Oklahoma had abridged black voters' rights in violation of the Fifteenth Amendment. *Id*. at 275.

Similarly, in *Harman*, Virginia replaced a poll-tax requirement for federal elections with a requirement that voters pay the tax or file a certificate of residence six months before the election. Here too, this change did not make it "more difficult" for any class of voters to cast ballots in federal elections. Virginia merely added another option by which citizens could qualify to vote. 380 U.S. at 531-532. Even so, the Supreme Court held the scheme unconstitutional under the Twenty-Fourth Amendment because it abridged the right to vote. *Id*. at 538-542. These cases further demonstrate why Indiana has abridged younger voters' rights even though it may be possible for younger voters to cast a ballot in other ways.

## CONCLUSION

The Twenty-Sixth Amendment's prohibition on "abridgment" of the right to vote on account of age, and the identical prohibitions on abridgment of that right on account of race, sex, or ability to pay a poll tax, apply whenever some voters are treated less favorably than others on account of the prohibited criterion. That is what Indiana Code §§ 3-5-2-16.5 and 3-11-10-24(a)(5) do on their face. "Any material requirement" based on the criteria prohibited by one of the Voting Amendments "subverts the effectiveness" of the Amendment and "must fall under its ban." *Harman*, 380 U.S. at 542. Accordingly, the Court should enter summary judgment for Plaintiffs.

Dated: December 10, 2021

Gary A. Isaac (*pro hac vice*)
Jeffrey M. Strauss (*pro hac vice*)
Brett E. Legner (*pro hac vice*)
Jed W. Glickstein (*pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
Email: gisaac@mayerbrown.com
Email: jstrauss@mayerbrown.com
Email: blegner@mayerbrown.com
Email: jglickstein@mayerbrown.com

    *Of Counsel*

Respectfully submitted,

*s/ William R. Groth*
William R. Groth, Of Counsel
VLINK LAW FIRM LLC
429 N. Pennsylvania St., Suite 411
Indianapolis, IN 46204
Tel: (317) 353-9353
Email: WGroth@fdgtlaborlaw.com

*s/ Mark W. Sniderman*
Mark W. Sniderman
FINDLING PARK CONYERS WOODY
& SNIDERMAN, P.C.
151 N. Delaware Street, Ste. 1520
Indianapolis, IN 46204
(317) 231-1100 Tel
(317) 231-1106 Fax
Email: msniderman@findlingpark.com

    *Counsel for Plaintiffs*