UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINS, CHAQUITTA MCCLEARY, DAVID SLIVKA, DOMINIC TUMMINELLO, and INDIANA VOTE BY MAIL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PAUL OKESON, KAREN CELESTINO-HORSEMAN, SUZANNAH WILSON OVERHOLT, and LITANY A. PYLE, in their official capacity as members of the Indiana Election Commission, and HOLLI SULLIVAN, in her official capacity as the Indiana Secretary of State, <br><br> Defendants. | Case No. 1:20-cv-01271-JPH-DLP |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND BRIEF
IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiffs have asked this Court to find that, as a matter of law, Indiana's absentee voting scheme violates the Twenty-Sixth Amendment by permitting elderly voters to cast an absentee ballot by mail but not voters younger than 65—unless, of course, a voter under age 65 otherwise qualifies to cast an absentee ballot by mail. The Court should decline to do so, and instead should grant summary judgment in Defendants' favor because permitting elderly voters to cast an absentee ballot by mail has no impact on Plaintiffs' or other non-elderly voters' ability to vote on Election Day. Accordingly, Indiana's law permitting elderly voters to cast an absentee ballot by mail does not deny or abridge the right to vote under the Twenty-Sixth Amendment as a matter of law.

## BACKGROUND

Indiana lawmakers provide Hoosiers with a variety of voting methods. All registered voters may vote in-person at their precinct polling place on Election Day, *see* Ind. Code § 3-11-8-2, or—using a procedure sometimes called "early voting"—may cast an absentee ballot in-person at various locations for the 28 days prior to Election Day, *see* Ind. Code §§ 3-11-4-1, 3-11-10-26. Alternatively, Hoosiers suffering from an illness or injury, or caring for someone at a private residence, may vote via a travelling voter board, which will bring a ballot to the voter's house and return it to election officials to be counted. *See* Ind. Code § 3-11-10-25.

In addition to these in-person voting opportunities, Indiana law provides thirteen separate circumstances under which eligible voters may instead cast an absentee ballot by mail, including when voters expect to be outside the county on Election Day or are observing a religious holiday during the time the polls are open, disabled, or confined to home by an illness. Ind. Code § 3-11-10-24. Indiana law also restricts who may handle printed or completed absentee ballots, deeming it a level 6 felony for anyone other than a select group of individuals to possess absentee ballots. *See* Ind. Code 3-14-2-16(9)(10). The Indiana legislature added subsection (9)–(10) in 2005, *see* 2005 Ind. Legis. Serv. P.L. 103-2005, shortly after the highly publicized East Chicago mayoral election scandal involving absentee ballot fraud. *See Pabey v. Pastrick*, 816 N.E.2d 1138, 1145–47 (Ind. 2004).

Indiana also permits elderly voters to cast an absentee ballot by mail. Ind. Code § 3-11-10-24(b)(5). "'Elderly' means a voter who is at least sixty-five (65) years of age." Ind. Code § 3-5-2-16.5. The Indiana General Assembly added "elderly voters" to the list of those eligible to cast an absentee ballot by mail in 1993. 1993 Ind. Legis. Serv. P.L. 3-1993.

Despite the fact that Congress has long required States to assist older voters in obtaining mail-in ballots as part of a national policy "to promote the fundamental right to vote by improving access for handicapped and elderly individuals," 52 U.S.C. §§ 20101, 20104, Plaintiffs now challenge Indiana's statute that "remove[s] for its senior citizens impediments not experienced by most other Hoosiers who desire to vote." *Tully v. Okeson*, 977 F.3d 608, 619 (7th Cir. 2020) (Ripple, J., concurring).

## PROCEDURAL HISTORY

On April 29, 2020, Plaintiffs filed their complaint seeking declaratory and injunctive relief, alleging that Indiana law violates the Fourteenth Amendment of the U.S. Constitution and the Equal Privileges and Immunities Clause of the Indiana Constitution (Art. 1, § 23) by permitting some, but not all, voters to cast an absentee ballot by mail. Dkt. 1. On May 4, 2020, Plaintiffs amended their complaint to add their Twenty-Sixth Amendment claim. Dkt. 6. On June 8, 2020, Plaintiffs moved for a preliminary injunction seeking an order extending the ability to vote absentee ballot by mail to all Indiana voters for the November 3, 2020 General Election. Dkt. 13 at 1. On August 21, 2020, this Court denied Plaintiffs' request for a preliminary injunction, holding that Plaintiffs had not made the requisite showing of a reasonable likelihood of success on any of their claims. *Tully v. Okeson*, 481 F. Supp. 3d. 816 (S.D. Ind. 2020).

The Seventh Circuit affirmed this Court's denial of the preliminary injunction, explaining with respect to the Twenty-Sixth Amendment claim that Plaintiffs were unlikely to succeed because permitting voters age 65 and older to vote absentee by mail does not implicate the right to vote for voters under the age of 65. *See Tully v. Okeson*, 977 F.3d 608, 614 (7th Cir. 2020). Plaintiffs sought certiorari on March 5, 2021, which the Supreme Court

denied on June 5, 2021. On September 14, 2021, Plaintiffs stipulated to a dismissal of their Fourteenth Amendment claim and supplemental state constitutional law claim, which this Court acknowledged on September 21, 2021. Dkts. 99, 101.

Plaintiffs have now moved for summary judgment on their sole remaining claim: that Indiana's absentee voting scheme violates the Twenty-Sixth Amendment by permitting voters 65 and older to cast an absentee ballot by mail but not voters under the age of 65 that do not otherwise fall into the categories of voters who may vote absentee-by-mail.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence shows that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining the existence of a genuine issue of material fact, the court construes all facts in a light most favorable to the non-movant and draws all reasonable inferences in his favor. *Id.* at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* After drawing all reasonable inferences from the facts in favor of the non-movant, if a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

A court may grant summary judgment on a purely legal basis where there are no factual discrepancies. *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177–78 (7th Cir. 2013). "The purpose of summary judgment is to enable the early disposition of

purely legal issues (or the early legal disposition of an entire matter) where there is no evidentiary dispute necessitating a trial." *In re Gouletas*, 590 B.R. 494, 501 (N.D. Ill. 2018). "As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted).

## ARGUMENT

Indiana's decision to grant elderly voters the option of voting absentee by mail has no impact whatsoever on a younger voter's ability to cast a ballot and does not run afoul of the Twenty-Sixth Amendment. The Court should deny Plaintiffs' request for summary judgment and grant summary judgment in Defendants' favor because there is no dispute of material fact and Plaintiffs' claim fails as a matter of law.

I.  **The Twenty-Sixth Amendment was widely understood to lower the voting age to 18**

The Twenty-Sixth Amendment was widely understood at the time of its adoption to be fundamentally concerned with lowering the voting age from 21—set by the Fourteenth Amendment, see U.S. Const., amend. IV, § 2—to 18. It served the dual purpose of "eliminating the 'administrative nightmare' of separate voter lists for national and local elections and bringing 18, 19 and 20-year-old persons into the political process." *Walgren v. Bd. of Selectmen of Town of Amherst, Mass.*, 373 F. Supp. 624, 633 (D. Mass. 1974) (quoting *Walgren v. Howes*, 482 F.2d 95, 100-101 (1st Cir. 1973)), *aff'd sub nom. Walgren v. Bd. of Selectmen of Town of Amherst*, 519 F.2d 1364 (1st Cir. 1975). The Amendment was "less a recognition of basic human rights" than "a change in the condition of young Americans" who were not only being called to fight in Vietnam, but were also "generally were marrying

5

earlier, travelling more widely and taking a greater interest in government than ever before." *Id.* at 634.

The history of the Twenty-Sixth Amendment's adoption illustrates that it was originally understood simply to secure the right to vote for all citizens age 18 and older. First, Congress attempted to lower the voting age to 18 for national, state, and local elections with the Voting Rights Act Amendments of 1970. The 1970 Act provided that "[e]xcept as required by the Constitution, no citizen of the United States who is otherwise qualified to vote in any State or political subdivision . . . shall be denied the right to vote . . . on account of age if such citizen is eighteen years of age or older." Voting Rights Act Amendments of 1970, Pub. L. No. 91-285, Section 301, 84 Stat. 314, 318 (1970). Shortly after its adoption, however, the Supreme Court issued a 4–1–4 decision holding that the 1970 Act, though valid for federal elections, was unconstitutional as applied to state and local elections. *Oregon v. Mitchell*, 400 U.S. 112 (1970). As a result, federal law provided one rule for federal elections, but state and local laws provided a patchwork of age qualifications for other elections.

The congressional debate surrounding the Twenty-Sixth Amendment shows that the principal impetus for its adoption was to remedy this issue and provide for one uniform voting age, set at 18, for all state and federal elections. Senator Birch Bayh, for example, observed that this "dual-age approach to voting would cause substantial nationwide confusion, delay, and danger of fraud." S. Rep. No. 92-26 at 12 (1971). He warned that this approach would force some voters to undertake "special burdens," including absentee voting requirements and increased travel, on those under the age of 21 who wanted to vote in federal elections, which "might well serve to dissuade them from participating in the

6

election." *Id.* at 14. Senator Mike Mansfield agreed, arguing in support of the Amendment that "such a dual age voting system can result only in added cost, confusion, delay, and waste, to say nothing of the unjust and unreasonable burden it imposes upon those citizens who are 18, 19, and 20 years of age." 117 Cong. Rec. 5815. Similarly, Representative Robert Michel noted that "my principal concern with this particular measure is one that has to do with permitting 18-year-olds to vote . . . in local and municipal elections." *Id.* at 7538. Senator Bob Dole discussed the dual-age issue as well, observing that because "[i]n view of the Congress' creation of [the age discrepancy] problem[,] . . . it is imperative for Congress to act expeditiously to remedy it." *Id.* at 5826. To do so, "[s]wift approval of Senate Joint Resolution 7 is the best and most appropriate means of providing an 18-year-old minimum voting age for all elections." *Id.*

Additional statements shows that Members of Congress were concerned with lowering the voting age to give the right to vote to those who were increasingly independent and educated. Representative James J. Howard said "this is something our country should do to in order to recognize that our 18-year-olds, our 19-year-olds, and 20-year-olds are adults in America." 117 Cong. Rec. 7537. Representative William Alexander, Jr. pointed out that 18-year-old citizens could be drafted into the military, get married, and be held responsible in court; it was "untenable that these same 18-year-olds should be held not sufficiently mature to make their wishes known at the ballot box . . . at all levels of government. *Id.* at 7553. Representative Jack Kemp explained that "as long as our society makes demands upon those within the 18- to 21-year-age group, it has some obligation to give them a role in choosing their government. Anything else sounds dangerously like taxation without representation." *Id.* at 7555.

This history indicates that the "mischiefs" at which the Twenty-Sixth Amendment was directed were the problems caused by the *Mitchell*'s "dual-age" voting system and the injustice of taxing and drafting 18-year-olds but denying them the vote, problems fully remedied when the Amendment set a nationwide minimum voting age of 18. *See generally* Samuel L. Bray, The Mischief Rule, 109 Geo. L. J. 967, 1013 (2021) (arguing that "the mischief rule still has something to offer to a wide array of interpreters," can be used with a good conscience even by a textualist," and "reflects a widespread intuition of interpreters, legal and otherwise"). As one noted scholar put it, "[a]ll [the Twenty-Sixth Amendment] did was change the voting age from twenty-one to eighteen. Nobody looked upon it as something more." Bruce A. Ackerman, We the People: Foundations 91 (1991).

The actions of state legislatures shortly after the Amendment's ratification further confirms that it was not understood to prohibit age distinctions in voting laws categorically. For example, in 1975 Texas adopted a provision virtually identical to the one at issue here—which "extended absentee voting to voters 65 years of age or older," *In re State of Texas*, 2020 WL 2759629, at *8 (Tex. May 27, 2020) (citing Act of May 30, 1975, 64th Leg. R.S., ch. 682, § 5, 1975 Tex. Gen. Laws 2080, 2082)—as part of a significant revision of the State's election laws meant in part "to bring the Texas Election Code into conformity with" with the Twenty-Sixth Amendment, House Comm. On Elections, Bill Analysis, S.B. 1047, 64th Leg., R.S. (1975)[1]. That Texas—which had ratified the Amendment just four years earlier, see Tex. S. Con. Res. 65, 62d Leg., R.S., 1971 Tex. Gen. Laws 3867—adopted a provision allowing all voters age 65 and older to vote by mail in the very same bill that lowered the

---

[1] Available at https://lrl.texas.gov/LASDOCS/64R/SB1047/SB1047_64R.pdf#page=82.

8

State's voting age to 18 strongly indicates that the Twenty-Sixth Amendment was not understood to prohibit such commonsense age-related distinctions.

Plaintiffs' theory of what the Twenty-Sixth Amendment protects would require invalidation of state election laws in at least twenty-three different States. Alabama, for example, permits voters over the age of 70 to move to the front of the line at the polls, *see* Ala. Code § 17-9-13(c), and Georgia has a similar law, *see* Ga. Code § 21-2-409.1. In Florida, individuals "65 years of age or older" are exempt from personal-identification requirements for voter registration, Fla. Stat. § 97.0535, and first-time voters "65 years of age or older" are also not required to include a copy of their identification cards when returning mail-in ballots, Fla. Stat. § 101.6923; Alabama has a similar provision as well, *see* Ala. Code § 17-9-30(d). Michigan requires voters to present personal identification when voting, Mich. Comp. Laws § 168.523, but provides free identification cards for residents 65 and older, id. § 28.292(14)(a), and at least seven other States have similar laws.[2] At least three additional States give elderly voters access to specialized procedures and resources (such as North Carolina, which allows a voter, "but because of age ... is unable to enter the

---

[2] Other States include: Arizona (personal identification is required to obtain a ballot, *see* Ariz. Rev. Stat. § 16-579, but the Arizona department of Transportation does not charge those age 65 and over for an identification card, *see* Ariz. Dep't of Transp., https://azdot.gov/node/5115); Colorado (personal identification is required, *see* Colo. Rev. Stat. §1-7-110, but the State does not charge a fee for a state identification card for individuals 60 and older, *see* Colo. Rev. Stat. §42-2-306); Kansas (the State generally requires that the form of identification "has not expired," but provides that" [e]xpired documents shall be valid if the bearer of the document is 65 years of age or older," Kan. Stat. 25-2908(h)(1)); New Hampshire (voters over the age of 65 may use an expired form of identification no matter how long it has been expired, while other voters are subject to a 5-year limit on expiry, *see* N.H. Rev. Stat. 659:13); North Carolina (voters 65 and older may present "any expired form of identification ... provided that the identification was unexpired on the registered voter's sixty-fifth birthday," N.C. Gen. Stat. § 163-166.16(a)(3); Texas (voters over the age of 70 may use a form of identification that has expired regardless of how long it has been expired, *see* Tex. Elec. Code § 63.0101); and Wisconsin (personal identification is required to vote, *see* Wis. Stat. § 6.79, but the State provides an identification card at no cost to individuals 65 and older, *see* https://wisconsindot.gov/Pages/dmv/license-drvs/how-to-apply/id-card.aspx#:~:text=Wisconsin%20now%20allows%20its%20residents,more%20visits%20to%20a%20DMV).

voting enclosure to vote in person without physical assistance," to vote "in the vehicle conveying that voter or in the immediate proximity of the voting place," N.C. Gen. Stat. § 163-166.9).[3] And at least nine States have laws strikingly similar to the one challenged here, which either specifically permit elderly voters in particular to vote absentee or make it easier for them to do so.[4] Importantly, Congress has long *required* States to assist older voters in obtaining mail-in ballots as part of a national policy "to promote the fundamental right to vote by improving access for handicapped and elderly individuals." 52 U.S.C. §§ 20101, 20104. This requirement too directly contradicts Plaintiffs' theory, for Plaintiffs' reading of the Twenty-Sixth Amendment would prohibit States and the federal government from granting any accommodations to elderly voters—even when, as here, those accommodations are granted to disabled, ill, and injured voters as well.

## II. Indiana's absentee voting scheme is constitutional because it does not deny or abridge the right to vote on account of age

### A. The right to vote does not include the right to vote absentee and Indiana Code § 3-11-10-24(b)(5) does not deny Plaintiffs the right to vote

The Court should deny Plaintiffs' motion because Indiana's law allowing voters age 65 and older to vote absentee by mail does not "deny or abridge" Plaintiffs' right to vote (or

---

[3] Other States include: Arizona (which provides alternative voting procedures for persons age 65-and-older who cannot access their polling place, *see* Ariz. Rev. Stat. § 16-581); and Rhode Island (which law provides that one voting booth shall be designated for priority use by voters over sixty-five years of age, *see* 17 R.I. Gen. Laws § 17-19-51).

[4] Ga. Code § 21-2-381 ("Any elector meeting criteria of advance age ... may request ... a ballot"); Ky. Rev. Stat. § 117.085(1)(a)(8) (in-person absentee ballots available for persons "on account of age ... not able to appear on election day."); La. Rev. Stat. § 18:1303(J) (allowing persons age 65 and older to vote absentee by mail); Miss. Code. § 23-15-715(b) (allowing persons age 65 and older to vote absentee by mail); Mo. Stat. § 115.277(6)(1) (allowing voters 65 and older to vote absentee); S.C. Code § 7-15-320 (allowing persons age 65 and older to vote absentee); Tenn. Code § 2-6-201 (allowing persons age 60 and older to vote absentee by mail); Tex. Elec. Code § 82.003 (allowing persons age 65 and older to vote absentee by mail); W. Va. Code § 3-3-1(b)(1)(B) (voters may vote absentee by mail on account of "[p]hysical disability or immobility due to extreme advanced age").

10

any other voter's right to vote). The Twenty-Sixth Amendment provides that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. Const. amend. XXVI, § 1. Plaintiffs claim that Indiana Code § 3-11-10-24(a) violates the Twenty-Sixth Amendment's prohibition against the denial or abridgement of the right to vote on account of age because it permits all registered voters ages 65 and older to vote absentee by mail, but only permits voters under the age of 65 to vote by mail if they meet any one of the statute's twelve other vote-by-mail qualifications.

While the Constitution provides the right to vote, it does not confer the right to vote absentee by mail. A mere two years before Congress ratified the Twenty-Sixth Amendment, the Supreme Court held that "the right to vote" does not include "a claimed right to receive absentee ballots." *McDonald v. Bd. of Election Commrs. of Chicago*, 394 U.S. 802, 807 (1969). In *McDonald* inmates awaiting trial in jail claimed that Illinois violated their "basic, fundamental right" to vote by refusing to allow them to vote absentee while allowing others—poll watchers, those away from the county, those observing a religious holiday, and the physically incapacitated—to do so. *Id.* at 807. The Court rejected the inmates' claim, explaining that because "the Illinois statutory scheme" did not have "an impact on [the inmates'] ability to exercise the fundamental right to vote," even though it was considerably more difficult for the inmates to vote in-person than non-incarcerated voters, it was "not the right to vote that is at stake here but a claimed right to receive absentee ballots." *Id.* In other words, the Constitution does not confer a right to vote by absentee ballot. *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 n.6 (1969) ("In *McDonald* . . . we were reviewing a statute which made casting a ballot easier for some who were unable to come to

11

the polls . . . at issue was not a claimed right to vote but a claimed right to an absentee ballot."); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring in the judgment) ("That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence—not a constitutional imperative that falls short of what is required."). Because *McDonald* held that the "right to vote" does not include a right to cast an absentee ballot by mail, it follows that state laws granting elderly voters the option of voting absentee by mail, when younger voters may or may not qualify to vote absentee by mail, neither deny nor abridge anyone's right to vote in contravention of the Twenty-Sixth Amendment.

The Fifth Circuit rejected a Twenty-Sixth Amendment claim similar to Plaintiffs' challenge. Initially, the Court denied the plaintiffs' requested preliminary injunction, finding that "[t]he well-respected logic of *McDonald* applies equally to the Twenty-Sixth Amendment claim" challenging a Texas law that also permits elderly voters to vote by absentee ballot. *Texas Democratic Party v. Abbott* (*TDP I*), 961 F.3d 389, 408 (5th Cir. 2020). The Fifth Circuit explained that "employing *McDonald*'s logic leads inescapably to the conclusion that rational-basis review applies" to both Fourteenth Amendment and Twenty-Sixth Amendment challenges to absentee-voting laws. *Id.* at 409. "If a state's decision to give mail-in ballots only to some voters does not normally implicate an equal-protection right to vote"—which, as explained above, is precisely what *McDonald* holds—"then neither does it implicate '[t]he right ... to vote' of the Twenty-Sixth Amendment." *Id.* "*McDonald*'s logic applies neatly to the Twenty-Sixth Amendment's text—which was ratified two years after *McDonald*—because the Amendment similarly focuses on whether the state has "'denied or abridged' the right to vote." *Id.*

Plaintiffs challenge the Seventh Circuit's decision to affirm this Court's denial of the preliminary injunction, explaining that even though the Seventh Circuit appropriately cited to *Texas Democratic Party v. Abbott* (*TDP II*), instead of *TDP I*, *TDP II* allegedly "reached the opposite conclusion about the meaning of the right to vote." Dkt. 113 at 24.[5] *TDP II* held that the Twenty-Sixth Amendment "confers an individual right to be free from the denial or abridgment of the right to vote on account of age," but it also recognized that "the right to vote in 1971 did not include a right to vote by mail. In-person voting was the rule, absentee voting the exception." *TDP II*, 978 F.3d 168, 188 (5th Cir. 2020) (vacating the district court's grant of a preliminary injunction).

*McDonald* is *not* inapposite, as Plaintiffs argue. *See* dkt. 113 at 18–21. First, while the Supreme Court may have decided *McDonald* before the enactment of the Twenty-Sixth Amendment, the Supreme Court has favorably cited *McDonald* in decisions following the enactment of the Twenty-Sixth Amendment and has not overturned it. The Supreme Court has consistently reiterated that it—not lower courts—has the sole power to overturn its precedents, which is not something the Court normally does "*sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000). Because the Court has not overturned *McDonald*, the decision remains good law. After all, *Burdick* itself "cites it favorably." *TDP I*, 961 F.3d at 406 (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)); *see also American Party of Texas v. White*, 415 U.S. 767, 795 (1974) (favorably citing *McDonald* after the passage of the Twenty-Sixth Amendment and explaining that "alleged discriminations in the availability

---

[5] The Fifth Circuit originally issued *TDP II* on September 21, 2020. *TDP II*, 978 F.3d at 174. On October 14, 2020, the Fifth Circuit withdrew the original opinion and reissued a new opinion. *Id.* The language from the September 21, 2020 version of the opinion which the Seventh Circuit cites in *Tully* remains in the operative *TDP II* opinion issued October 14, 2020. *Compare Tully*, 977 F.3d at 613 with *TDP II*, 978 F.3d at 185.

13

the absentee ballot" could violate the Equal Protection Clause). And both the Fifth and Sixth Circuits more recently cited *McDonald* favorably for the proposition that "there is no constitutional right to an absentee ballot." *See Mays v. Rose*, 951 F.3d 775, 792 (6th Cir. 2020); *TDP II*, 978 F.3d at 188.

Second, it is well-established that age is not a suspect class. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000). Even if Plaintiffs were correct that the Twenty-Sixth Amendment effectively creates a suspect class based on age, evaluating Indiana Code section 3-10-11-14(b)(5) with heightened scrutiny would appropriately be done under the Fourteenth Amendment's equal protection clause. *American Party of Texas*, 415 U.S. at 795. As the Seventh Circuit correctly explained in affirming this Court's denial of the preliminary injunction, laws "similarly restricting the ability of African Americans or women or the poor to vote by mail" in violation of the Fifteenth, Nineteenth, and Twenty-Fourth Amendments, respectively, "could be subject to heightened scrutiny" but that heighted scrutiny "would come from the Fourteenth Amendment's equal protection clause." *Tully*, 977 F.3d at 614 (citing *American Party of Texas*, 415 U.S. at 767). Plaintiffs have chosen to not proceed with their Fourteenth Amendment claim.

The Supreme Court's recent decision in *Brnovich* does not undermine this analysis as Plaintiffs claim. *See* dkt. 113 at 22–23. Defendants have never claimed that because there is no constitutional right to vote absentee by mail, that absentee voting laws are wholly exempt from scrutiny at all times no matter the circumstance (and *McDonald* does not stand for the proposition that absentee voting laws are exempt from scrutiny, it holds that rational basis review applies instead of heightened scrutiny, *see McDonald*, 394 U.S. at 808). In *Brnovich*, the only challenge to a statute involving absentee voting was a statute governing

14

who could possess completed absentee ballots—not who could cast an absentee ballot. *See Brnovich v. Democratic Nat'l Committee*, 141 S. Ct. 2321, 2330 (2021). Because Arizona permits all voters to request an absentee ballot by mail, the Supreme Court did not address the question of whether there was a right to cast an absentee ballot by mail or invoke *McDonald*. *See id.*

At any rate, *Brnovich* explained that the fact that "in 1982 [when Congress amended § 2 of the Voting Rights Act] States typically required nearly all voters to cast their ballots in person on election day and allowed only narrow and tightly defined categories of voters to cast absentee ballots" was relevant to the Court's consideration of whether Arizona's statute restricting who could possess a completed absentee ballot rendered Arizona's elections to be not "equally open." *Id.* at 2339. The Court also emphasized that "courts must consider the opportunities provided by a State's entire system of voting when assessing the burden imposed by a [provision challenged under § 2 of the Voting Rights Act]." *Id.* No part of the Court's decision in *Brnovich* undermines the holding in *McDonald* nor does it undermine what Indiana has argued throughout this case—that looking at Indiana's election scheme as a whole, permitting elderly voters to cast an absentee ballot by mail does not deny or abridge a younger voter's right to vote because it has no impact on the younger voter's ability to vote.

Accordingly, the Twenty-Sixth Amendment does not prohibit a State from using age as a criterion for eligibility to cast an absentee ballot by mail because such a distinction does not deny or abridge the right to vote. It instead merely limits the "claimed right to receive absentee ballots." *Id.* (quoting McDonald, 394 U.S. at 807). Indiana's mail-in voting law therefore does not implicate the Twenty-Sixth Amendment at all.

15

### B. Indiana Code § 3-11-10-24(b)(5) also does not abridge Plaintiffs' right to vote

The Fifth Circuit in *TDP II* explained that because the "language and structure of the Twenty-Sixth Amendment mirror the Fifteenth, Nineteenth, and Twenty-Fourth Amendments," which have all been interpreted to "provide an individual right to be free from the denial or abridgement of the right to vote based on the classification described in the Amendment," the Twenty-Sixth Amendment too confers "an individual right to be free from the denial or abridgment of the right to vote on account of age." *TDP* II, 978 at 183–84. The Fifth Circuit, however, in ruling on whether a grant of a preliminary injunction should be affirmed or vacated, did not include deep dive into the legislative history surrounding the passage of the Twenty-Sixth Amendment and performed a cursory review of the Amendment's text. *Id.* This Court should not defer to the Fifth Circuit's holding and consider the legislative history that suggests the purpose of the Twenty-Sixth Amendment was to lower the voting age to 18.

But, assuming *arguendo* that Plaintiffs and the Fifth Circuit in *TDP II* are correct that the Twenty-Sixth Amendment confers an individual right to be free from the denial or abridgment of the right to vote on account of age, Indiana Code section 3-11-10-24(b)(5) is still constitutional. As explained above, this provision does not completely prohibit voters under the age of 65 from casting a ballot, and accordingly, it does not deny Plaintiffs the right to vote. But the challenged provision also does not abridge Plaintiffs' right to vote, because it does not make voting more difficult for voters under the age of 65 to exercise their right to vote.

The Supreme Court has not defined "abridge" in the context of the Twenty-Sixth Amendment. As Plaintiffs discuss in their supporting brief, the Supreme Court has

16

explained in evaluating a challenge under § 5 of the Voting Rights Act that "abridge" has "never been refer to only retrogression." *See* dkt. 113 at 26 (quoting *Reno v. Bossier Parish*, 528 U.S. 320, 333 (2000)). Plaintiffs overlook the Supreme Court's explanation that it "makes no sense to suggest that a voting practice 'abridges' the right to vote without some baseline with which to compare the practice." *Bossier Parish*, 528 U.S. at 334. As the Fifth Circuit explained in *TDP II*, "[c]onceptually, plaintiffs are converting the Twenty-Sixth Amendment into the positive assertion that voting rights must be identical for all age groups at all times… The Amendment, though, is a prohibition against adopting rules based on age that deny or abridge the rights voters already have." *TDP II*, 978 F.3d at 189. Under Plaintiffs' theory of an abridgment, "a new baseline for voting arises with each new election rule" which creates "an implausible reading of 'abridge.'" *Id.* The Fifth Circuit held that "an election law abridges a person's right to vote for the purpose of the Twenty-Sixth Amendment only if it makes voting *more difficult* for that person than it was before the law was enacted or enforced" since the Supreme Court has held that the "'core meaning' of 'abridge' is to 'shorten.'" *Id.* at 191 (quoting *Bossier Parish*, 528 U.S. at 333–34).

The Indiana General Assembly added the provision permitting elderly voters to vote absentee by mail in 1993. S*ee* 1993 Ind. Legis. Serv. P.L. 3-1993 (adding elderly voters to the list of voters who could cast an absentee ballot); Ind. Code § 3-11-10-24 (1991) ("Each voter entitled to vote by absentee ballot is entitled to vote by mail"). At the time the Indiana General Assembly added elderly voters to the list of those who could cast an absentee ballot, only the following voters were eligible to cast an absentee ballot by mail: voters with disabilities whose precinct voting location was not accessible; overseas voters; absent uniformed service members; voters who expected to be absent from the county on election

17

day; voters confined on election day to the voter's residence, healthcare facility, or hospital due to illness or injury; voters absent from the precinct of their residence because of service as a precinct election officer, challenger or pollbook holder, or employ by an election board to administer the election; voters prevented from voting due to the voter's care of an individual confined to a private residence because of illness or injury. *See* 1988 Ind. Legis. Serv. P.L. 10-1988; 1991 Ind. Legis. Serv. P.L. 4-1991, §§ 67, 96.

Notably absent from the list of absentee-eligible voters are voters under the age of 65. The Indiana General Assembly's addition of elderly voters as a group of voters who could vote absentee had no impact whatsoever on younger voters' ability to vote as before, since adding elderly voters to the list of voters who could vote absentee did not remove any ability of younger voters to cast an absentee ballot. The baseline for voters under the age of 65 in 1993 was that, unless the non-elderly voter fell into one of the categories of voters who could vote absentee, non-elderly voters had to cast their ballot in-person on Election Day. Because the baseline for voters under the age of 65 was the same both before and after the addition of elderly voters as a group of voters who could cast an absentee ballot, this addition did not make it more difficult for non-elderly voters to cast their ballot and accordingly did not abridge any right to vote held by non-elderly voters under the Twenty-Sixth Amendment.

The privilege of casting an absentee ballot by mail is not a zero-sum game. The Indiana General Assembly's decision to extend the privilege of voting by mail to elderly voters did not correspondingly reduce non-elderly voters' opportunities to cast a ballot as they existed at the time of enactment in 1993. Accordingly, the Twenty-Sixth Amendment does not prohibit Indiana from permitting an elderly voter to cast an absentee ballot by mail

because doing so does not make it more difficult for a non-elderly voter to cast a ballot. Indiana's mail-in voting law thus does not violate the Twenty-Sixth Amendment because it does not deny or abridge Plaintiffs' right to vote. The Court should grant summary judgment in Defendants' favor.

## CONCLUSION

In their operative complaint, Plaintiffs do not identify the ultimate relief they seek for their sole remaining claim. While Plaintiffs request an order declaring Indiana Code § 3-11-10-24(a)(5) unconstitutional, Plaintiffs request no further relief on this claim. Accordingly, Plaintiffs request for relief is vague. For all of the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

Respectfully submitted,

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL

By:   */s/ Courtney L. Abshire*
Courtney L. Abshire
Deputy Attorney General